Daniel John FARNACK

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 17, 2010.

Decided March 28, 2011.

Terrance M. Edwards, Assistant Counsel, Harrisburg, for appellant.

William R. Bernhart, Reading, for appellee.

BEFORE: COHN JUBELIRER, Judge, and LEAVITT, Judge, and BUTLER, Judge.

OPINION BY Judge LEAVITT.

The Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (Department), appeals an order of the Court of Common Pleas of Northampton County (trial court) that sustained the appeal of Daniel John Farnack (Licensee) from a one-year suspension of his operating privileges for refusing to submit to chemical testing. Because the trial court erred in holding that the arresting officer lacked reasonable grounds to request chemical testing, we reverse.

On October 2, 2009, Licensee was arrested and charged with driving under the influence of a controlled substance under Section 3802(d) of the Vehicle Code, 75 Pa.C.S. § 3802(d),[1] after he was involved in

---

1. Section 3802(d) provides, in relevant part:
   (d) Controlled substances.—An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:
      (1) There is in the individual's blood any amount of a:

      (i) Schedule I controlled substance, ...
      (ii) Schedule II or Schedule III controlled substance, ... which has not been medically prescribed for the individual; or
      (iii) metabolite of a substance under subparagraph (i) or (ii).

a single vehicle accident. On November 6, 2009, the Department notified Licensee that his operating privileges would be suspended for a period of one year, effective December 11, 2009. The notice explained that the suspension resulted from his refusal to submit to chemical testing following the accident, in violation of Section 1547(b) of the Vehicle Code, commonly referred to as Pennsylvania's Implied Consent Law. 75 Pa.C.S. § 1547(b).[2] Licensee appealed, and the trial court held a *de novo* hearing on May 27, 2010.

The Department presented the testimony of Corporal David Marino, an eleven-year veteran of the Bushkill Township Police Department. Corporal Marino testified that on October 2, 2009, at approximately 1:31 a.m., he was dispatched to a motor vehicle accident. He arrived on the scene at 1:35 a.m. and observed a red SUV resting several feet off the roadway with smoke pouring from its hood and its airbags deployed. Corporal Marino noticed that the vehicle, before coming to a stop, had run into several items, including a street sign, fire hydrant, shrubbery, and a utility pole. The force of the vehicle's collision with the utility pole was enough to snap the pole at ground level and "total" the vehicle. The driver of the vehicle was no longer at the scene.

Corporal Marino ran the vehicle's registration and discovered that it was owned by Daniel and Karen Farnack. At 1:46 a.m., Corporal Marino arrived at the Farnack residence, which is located one and one-half miles from the scene of the accident. After identifying himself to Karen Farnack, Corporal Marino asked her who owned the vehicle and who would have been driving it that evening. Karen Farnack informed Marino that she jointly owned the vehicle with her son, Licensee, and that he would have been driving it that evening. Corporal Marino asked to speak with Licensee, who then emerged from an adjacent room. Corporal Marino observed that Licensee had grass all over his pants; his eyes were red, glassy, and bloodshot; and he was speaking in a slow, slurred manner. Although Licensee had no visible injuries and was not complaining of pain, Corporal Marino had an ambulance dispatched. Licensee was examined by ambulance personnel, and he declined further treatment from a hospital or physician.

Corporal Marino testified that Licensee admitted to being the driver of the vehicle. However, Licensee told Corporal Marino that the accident occurred at a different location, not the actual scene of the accident. Corporal Marino asked Licensee if he had consumed alcohol that evening, and he replied that he had not. Licensee then submitted to a breath test, which was negative for alcohol. Corporal

(2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.
(3) The individual is under the combined influence of alcohol and a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.
(4) The individual is under the influence of a solvent or noxious substance. . . .
75 Pa.C.S. § 3802(d).

2. Section 1547(b)(1)(i) states:

(b) Suspension for refusal.—
(1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:
(i) Except as set forth in subparagraph (ii), for a period of 12 months.
75 Pa.C.S. § 1547(b)(1)(i).

Marino observed that Licensee exhibited poor balance; had a hard time focusing and maintaining eye contact; and had difficulty retrieving his wallet from his pocket and his identification from his wallet. Corporal Marino attempted to administer the horizontal gaze nystagmus test, but was unable to do so because Licensee swayed too much and could not focus his eyes.

Corporal Marino testified that, based upon his observations of Licensee's appearance and demeanor, he believed Licensee was under the influence of a controlled substance. In support of that conclusion, Corporal Marino stated that during his eleven years as a police officer he had arrested several individuals for driving under the influence of a controlled substance. Those individuals had exhibited poor balance; red, glassy, bloodshot eyes; slow, slurred speech; and a disruption of fine motor skills. Corporal Marino placed Licensee under arrest and transported him to the Easton DUI Center, where Licensee refused to submit to chemical testing after being given the appropriate warnings.

The Department next presented the testimony of Officer Brandon Schippers, who processed Licensee at the Easton DUI Center. Officer Schippers testified that Licensee appeared disheveled, had a distinct gaze, and was arrogant. He refused the standard field sobriety tests offered at the center. Officer Schippers read aloud the entire DL–26 form, including the warning that Licensee would lose his operating privileges if he refused chemical testing. Licensee refused to consent and noted his refusal by signing the DL–26 form.

Licensee testified regarding his recollection of the events surrounding his accident. He stated that he had not consumed either alcohol or a controlled substance that evening; he simply lost control of his vehicle and veered off the road. Licensee stated that he hit his head on the windshield, which impaired his vision for a short period of time. He also experienced pain throughout the right side of his body. Licensee testified that he walked home once his vision returned. By the time he arrived at his home, he was beginning to feel better and took Tylenol for his pain. He estimated that he was home for approximately fifteen minutes before Corporal Marino arrived. Licensee refused chemical testing because he believed he had been unjustly arrested.

The trial court sustained Licensee's appeal, concluding that Corporal Marino did not have reasonable grounds to believe that Licensee had operated his vehicle while under the influence of a controlled substance. The Department appealed to this Court. In its statement filed pursuant to Pa. R.A.P. 1925(a), the trial court concluded that, upon further consideration of the evidence, the arresting officer did have reasonable grounds to believe that Licensee had operated his vehicle while under the influence of a controlled substance. The trial court urges this Court to reverse its order.

■ On appeal,[3] the Department contends that the trial court erred in concluding that Corporal Marino did not have reasonable grounds to believe that Licensee had driven his vehicle while under the influence of a controlled substance. We agree.

---

3. Our review is limited to determining whether the factual findings of the trial court are supported by competent evidence and whether the trial court committed an error of law or an abuse of discretion. *Banner v. Department of Transportation, Bureau of Driver Licensing,* 558 Pa. 439, 443–44, 737 A.2d 1203, 1205 (1999). Whether reasonable grounds exist is a question of law reviewable by this Court. *Id.* at 447, 737 A.2d at 1207.

■ It is well-settled that to establish that a suspension of operating privileges was proper the Department must prove that the licensee: (1) was arrested for driving under the influence by a police officer who had reasonable grounds to believe the licensee was under the influence of alcohol or a controlled substance; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was warned that the refusal would result in a license suspension. *Banner v. Department of Transportation, Bureau of Driver Licensing*, 558 Pa. 439, 445, 737 A.2d 1203, 1206 (1999). The only issue presented for our review is whether the arresting officer had reasonable grounds to believe Licensee was under the influence of a controlled substance.

■ "Reasonable grounds" exist when a person, in the position of the police officer, viewing the facts and circumstances as they appeared at the time of the arrest, could have concluded that the licensee was operating a vehicle while under the influence of alcohol or controlled substances. *Id.* at 446, 737 A.2d at 1207. This test, as a whole, is not very demanding.[4] In fact, the arresting officer need not even be correct in his belief that the licensee was intoxicated. *Department of Transportation, Bureau of Traffic Safety v. Dreisbach*, 26 Pa.Cmwlth. 201, 363 A.2d 870, 872 (1976).

■ The question of whether reasonable grounds exist is reviewed on a case by case basis. *Banner*, 558 Pa. at 447, 737 A.2d at 1207. All of the facts and circumstances, as they appeared at the time of the arrest, must be considered. *Schindler v. Department of Transportation, Bureau of Driver Licensing*, 976 A.2d 601, 605 (Pa.Cmwlth.2009). There is not a set list of behaviors that must be exhibited in order for an officer to have reasonable grounds. *Stancavage v. Department of Transportation, Bureau of Driver Licensing*, 986 A.2d 895, 899 (Pa.Cmwlth.2009). Our case law has identified factors that constitute reasonable grounds. They include: a licensee who staggers or sways; has slurred speech; exhibits uncooperative behavior; or emits an odor of alcohol. *Id.* Where the arresting officer cites a driver's glassy eyes, there must be at least one other obvious physical sign of intoxication in order for the officer to have reasonable grounds for arrest. *Id.*

■ On the other hand, the absence of one or more of the above-listed *Stancavage* factors does not mean the officer lacks reasonable grounds to believe a motorist has driven while intoxicated. In *Bruno v. Department of Transportation*, 54 Pa. Cmwlth. 353, 422 A.2d 217, 218 (1980), we found the officer had reasonable grounds even though the licensee did not emit an odor of alcohol. Likewise, passing a breath test does not foreclose a finding of reasonable grounds. *Matthews v. Commonwealth*, 115 Pa.Cmwlth. 403, 540 A.2d 349, 351 (1988). The arresting officer may rely on behavior that indicates the presence of an entirely different chemical, such as a controlled substance, in determining whether he has reasonable grounds to request an additional blood test. *Id.*

Here, Corporal Marino testified to several independent factors that led to his determination that Licensee was driving under the influence of a controlled substance. They included red, glassy, and bloodshot eyes; difficulty speaking; inability to focus or maintain eye contact; and struggling with simple motor functions.

4. The standard of "reasonable grounds" used to support a license suspension is a lesser standard than the probable cause standard required for criminal prosecution. *Banner*, 558 Pa. at 446, 737 A.2d at 1207.

Based upon his professional experience and the negative breathalyzer result, Corporal Marino believed that Licensee was under the influence of a controlled substance.[5] Accordingly, it was irrelevant that Licensee passed the breathalyzer test.

Licensee's testimony did not conflict with Corporal Marino's. Licensee did not testify that his conduct or appearance was different from what Corporal Marino described. He simply denied that he had consumed alcohol or controlled substances that evening. Further, he did not tell Corporal Marino that he had hit his head on the windshield and was still in pain, nor did he complain of any injuries or provide any information to Corporal Marino to explain his appearance and inability to focus. The sole issue before the trial court was whether Corporal Marino had reasonable grounds to request chemical testing, based upon the totality of the circumstances as they appeared to Corporal Marino.

This case is distinguishable from our decision in *Schindler*, where we held that a police officer did not have reasonable grounds to request chemical testing of a driver that had been involved in a single vehicle, roll-over accident. The officer testified that he arrested the driver because he exhibited signs of intoxication, with slurred speech, an unsteady gait, and difficulty maintaining his balance. On the other hand, the driver did not smell of alcohol or exhibit bloodshot, glassy eyes, and he passed a breathalyzer test.[6] In addition, the driver was found sitting on the side of the road, unable to walk, and bleeding; however, these injuries were not given any consideration by the arresting officer. Finally, the arresting officer did not testify that he believed that the licensee may have been under the influence of a controlled substance, other than alcohol.

Here, Licensee testified before the trial court that he hit his head and was in pain when Corporal Marino appeared at his house. However, he did not relate those facts to the arresting officer. Further, Licensee did not dispute Corporal Marino's account of his appearance. Because Licensee did not do so, the trial court was bound to review the circumstances as described by Corporal Marino.

The totality of the circumstances encountered by Corporal Marino during the investigation of Licensee's accident supported his decision to request chemical testing. Therefore, Corporal Marino had reasonable grounds to believe Licensee was under the influence of a controlled substance when he crashed his car. The trial court erred in sustaining Licensee's statutory license appeal and, accordingly, we reverse.

### ORDER

AND NOW, this 28th day of March, 2011, the order of the Court of Common Pleas of Northampton County, dated June 10, 2010, in the above-captioned matter is hereby REVERSED.

---

5. As we stated in *Matthews*, a chemical test is needed in these situations due to the difficulty in detecting the presence of controlled substances. This is especially true in instances where the controlled substance was ingested at another location, prior to entering the vehicle, or where the vessel that contained the controlled substance has been discarded.

6. Notably, slurred speech and an unsteady gait are typically "combined with *bloodshot eyes* [or] the smell of alcohol, [to constitute reasonable grounds.]" *Schindler*, 976 A.2d at 605 (emphasis added). Neither was present in *Schindler*.