IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David Lephew,                                    :
                    Appellant             :
                                                 :    No. 846 C.D. 2015
          v.                              :
                                                 :    Submitted: November 13, 2015
Commonwealth of Pennsylvania,             :
Department of Transportation,             :
Bureau of Driver Licensing                :


BEFORE:    HONORABLE DAN PELLEGRINI, President Judge[1]
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                                FILED: February 9, 2016


          David Lephew (Licensee) appeals from the April 23, 2015 order of the
Court of Common Pleas of 39th Judicial District, Franklin County Branch (trial court),
which dismissed Licensee's appeal from an eighteen-month suspension of his driving
privilege imposed by the Department of Transportation, Bureau of Driver Licensing
(DOT) for refusing to submit to chemical testing pursuant to section 1547(b)(1)(ii) of

---

[1] This case was assigned to the opinion writer on or before December 31, 2015, when President Judge Pellegrini assumed the status of senior judge.

the Vehicle Code (Code)[2] following his arrest for violating section 3802 of the Code, 75 Pa.C.S. §3802 (driving under the influence of alcohol or controlled substance).

**Facts and Procedural Background**

By notice dated December 24, 2014, DOT notified Licensee that his driving privilege would be suspended for eighteen months for failure to submit to chemical testing in violation of section 1547 of the Code. Licensee appealed to the trial court, which held a *de novo* hearing on April 23, 2015.

Washington Township Police Officer Steven Shannon (Officer Shannon) testified to the following relevant facts. On December 14, 2014, Officer Shannon was dispatched to the scene of a single vehicle accident. Officer Shannon was advised that the accident may have resulted in injuries and requested assistance from local police. When he arrived at the accident scene, Officer Shannon observed two local officers standing at the driver's side of a pickup truck that was at rest against a large boulder approximately twenty to thirty feet from the edge of the road. (Reproduced Record (R.R.) at 35-36).

Officer Shannon observed that the vehicle had significant front-end damage and that the occupant of the vehicle was sitting in the driver's seat but did not appear to have any visible injuries. Officer Shannon stood approximately three to five feet from the vehicle and engaged the occupant, who advised Officer Shannon that he was fine and asked what happened. Officer Shannon advised the occupant that he had been in an accident and inquired whether he knew how it had happened.

---

[2] 75 Pa.C.S. §1547(b)(1)(ii). Section 1547(b)(1)(ii) provides that if any person placed under arrest for driving under the influence (DUI) is requested to submit to a chemical test and refuses to do so, DOT shall suspend the person's operating privilege for a period of eighteen months if the person has previously been sentenced for DUI.

2

The occupant advised Officer Shannon that he was not sure how the accident occurred.

Officer Shannon asked whether the occupant had his driver's license with him and the occupant advised him that he did. The occupant slowly started to reach for his back pocket but was unable to do so. The occupant then reached toward the passenger-side visor and retrieved a vehicle registration and insurance card. Officer Shannon observed that the names on the documents were David and Sherry Lephew and asked if the occupant was David Lephew. The occupant confirmed that he was Licensee; however, he did not provide Officer Shannon with his driver's license. (R.R. at 36-38, 63, 65.)

While Officer Shannon was speaking with Licensee, he observed that Licensee's eyes were bloodshot and glassy. Officer Shannon noticed that Licensee's speech was slow and slurred and that his movements were also slow. Officer Shannon asked Licensee whether he was able to exit the vehicle and Licensee confirmed that he could. However, when Licensee attempted to exit the vehicle he grimaced in pain. Officer Shannon told Licensee to remain in the vehicle if he was injured and Licensee advised Officer Shannon that he was fine but that he suffered from chronic back pain. Licensee continued to exit the vehicle and Officer Shannon observed that Licensee still appeared to be in pain, at which point Officer Shannon advised Licensee to remain in the vehicle and requested assistance from emergency medical services (EMS). (R.R. at 38.)

When EMS arrived, they helped Licensee exit the vehicle, placed him on a stretcher, and loaded him into an ambulance. Officer Shannon began investigating the accident scene for additional evidence and discovered three prescription bottles; two in the center console and one on the floorboard. During his investigation, an

3

EMS worker approached Officer Shannon and expressed concern that Licensee was under the influence because his behavior was lethargic and his responses to questions were concerning. Officer Shannon provided EMS with the three prescription bottles and observed that one of the bottles was a prescription for sixty pills of Oxycodone, was filled by Licensee in early November 2014, and was currently empty.[3] EMS advised Officer Shannon that the Oxycodone bottle should not have been empty. (R.R. at 39-41, 58).

Officer Shannon also interviewed two individuals who witnessed the accident. The witnesses indicated that they had been driving behind Licensee for approximately two to three miles and had observed Licensee operating the vehicle erratically and in a concerning manner and stated that they had contacted Franklin County Emergency Communications to communicate their concerns about Licensee's driving. The ambulance subsequently transported Licensee to the hospital and Officer Shannon followed thereafter. (R.R. at 41-42.)

Officer Shannon spoke with Licensee at the hospital and inquired whether he knew what had occurred. Licensee told Officer Shannon that he was travelling to Pittsburgh on Interstate 81, but that was all he could remember; he could not recall how the accident happened. During their conversation, Officer Shannon noticed that Licensee's speech was still slurred, his eyes were still bloodshot and glassy, and his pupils were constricted; however, Officer Shannon acknowledged that the hospital's bright lights could cause Licensee's pupils to constrict for a period of time. Officer Shannon asked Licensee whether he was prescribed any medication and Licensee confirmed that he was and noted that he had taken his prescription that

___

[3] Officer Shannon testified that the other two bottles contained medication for high blood pressure and would have no impairing affect. (R.R. at 55.)

4

day as prescribed. Officer Shannon asked Licensee whether he had consumed any alcoholic beverages and Licensee stated that he had not. However, for the first time, Officer Shannon detected a slight odor of alcohol on Licensee's breath. (R.R. at 42-43, 63.)

At that point, Officer Shannon believed that Licensee was under the influence of a combination of drugs and alcohol and advised Licensee that he was in custody via the DL-26 form and read the implied consent warnings to him verbatim.[4]

---

[4] The DL-26 form contains the implied consent warnings required by section 1547 of the Code. The form advises police officers to read the following warnings in their entirety to a motorist:

> 1. You are under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code;
>
> 2. I am requesting that you submit to a chemical test of blood (blood, breath, or urine. The arresting officer chooses the chemical test).
>
> 3. If you refuse to submit to the chemical test your operating privilege will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of driving under the influence, you'll be suspended for up to 18 months. In addition, if you refuse to submit to the chemical test and you're convicted of violating Section 3802(a)(1) (relating to impaired driving) of the Vehicle Code, then, because of your refusal, you will be subject to more severe penalties set forth in Section 3804(c) (relating to penalties) of the Vehicle Code. These are the same penalties that would be imposed if you were convicted of driving with the highest rate of alcohol, which include a minimum of 72 consecutive hours in jail and a minimum fine of $1,000.00, up to a maximum of five years in jail and a maximum fine of $10,000.00.
>
> 4. You have no right to speak with an attorney or anyone else before deciding whether to submit to the testing. If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to chemical testing, you will have refused the test.

**(Footnote continued on next page…)**

Licensee signed the form indicating that Officer Shannon had read the implied consent warnings to him; however, he refused to submit to the chemical blood test. (R.R. at 43-46.)

Licensee testified that, on the night in question, he was travelling north on Interstate 81, but noted that "everything that should be common to me, recognizable to me, was not." (R.R. at 67.) He stated that he was not feeling well, that he exited the interstate, and that the last thing he remembered was driving toward home or toward an emergency room, which were in the same direction. Licensee confirmed that he had been prescribed Oxycodone, but he denied taking any Oxycodone on the day of the accident. Licensee testified that his Oxycodone prescription was filled on November 1, 2014, that his prescription contained sixty pills, and that he was instructed to take two pills per day. He further testified that he complied with the prescription instructions, that the prescription contained no refills, and that the last day he consumed Oxycodone was on November 30, 2014.[5] (R.R. at 67-69.)

Licensee stated that EMS never asked him whether he was under the influence of a controlled substance and the first time he was aware that he was

---

**(continued…)**

(R.R. at 44-45.)

[5] At the hearing, Licensee offered into the record a prescription label that purported to indicate when Licensee's Oxycodone prescription was filled and, thus, the date the medication would have been exhausted if Licensee had been taking the medication as prescribed. However, the trial court concluded that the prescription label that was presented was not the same label that would have been on the bottle that was recovered from the accident scene. Therefore, it was not clear to the trial court what the Oxycodone prescription bottle that was recovered from the accident scene actually indicated. (R.R. at 83.)

suspected of being under the influence was when Officer Shannon asked him at the hospital whether he had consumed any drugs or alcohol. He testified that he does not have an explanation why the accident occurred, but that he has been sober since November 2008 and does not use drugs or drink alcohol. Licensee acknowledged that he takes a fluid pill to regulate the fluid in his liver and a blood pressure pill to maintain a steady blood pressure, but stated that those are the only medications he consumes. (R.R. at 69-71.)

Licensee further testified that he does not recall speaking to Officer Shannon at the accident scene. He acknowledged that he did not comply with Officer Shannon's request to submit to a blood test, but stated that he does not recall Officer Shannon reading the consequences of his failure to submit to testing. Licensee testified that, although he refused Officer Shannon's request to submit to a blood test, a blood test was performed at the hospital and the results indicated that no drugs or alcohol were present.[6]

On April 23, 2015, the trial court issued an order dismissing Licensee's appeal. In its opinion, the trial court determined that Officer Shannon had reasonable grounds to believe that Licensee had driven under the influence because Officer Shannon observed Licensee's slurred speech, bloodshot and glassy eyes, and constricted pupils. The trial court also noted that Officer Shannon discovered an

---

[6] Notwithstanding Licensee's testimony, the record contains no evidence of a blood test being performed. At the hearing, Licensee's counsel confirmed that he had copies of the results of a blood test that was performed at the hospital, but conceded that he did not offer the test results into the record because it was his understanding that those results were irrelevant to the determination of whether Officer Shannon had reasonable grounds to believe that Licensee was driving under the influence. Licensee's counsel offered to supplement the record to provide the test results but failed to do so. (R.R. at 77-79.)

7

empty Oxycodone bottle in Licensee's vehicle and found his testimony that he detected alcohol on Licensee's breath credible. Moreover, multiple witnesses advised Officer Shannon that Licensee was driving erratically and EMS personnel expressed concern that Licensee was under the influence. Accordingly, the trial court concluded that a reasonable person in Officer Shannon's position would have had reasonable grounds to believe that Licensee had been driving under the influence.

On appeal to this Court,[7] Licensee asserts that the trial court erred because Officer Shannon did not possess reasonable grounds to believe that Licensee was driving under the influence. Specifically, Licensee argues that some indicators of impairment could be attributed to the accident, not intoxication, and that Officer Shannon did not consider all of the relevant facts and circumstances. Instead, he only considered evidence that supported a finding of intoxication.

**Discussion**

To sustain a suspension of a licensee's operating privilege for refusal to submit to chemical testing under section 1547 of the Code, DOT must establish that the licensee:

> (1) was arrested for driving under the influence by a police officer who had reasonable grounds to believe that the licensee was operating a vehicle while under the influence of alcohol or a controlled substance; (2) was asked to submit to a chemical test; (3) refused to do so, and; (4) was warned that the refusal would result in a license suspension.

---

[7] Our scope of review is limited to determining whether the trial court's necessary findings are supported by substantial evidence and whether the trial court committed an error of law or abused its discretion. *Martinovic v. Department of Transportation, Bureau of Driver Licensing*, 881 A.2d 30, 34 n.6 (Pa. Cmwlth. 2005).

*Farnack v. Department of Transportation, Bureau of Driver Licensing*, 29 A.3d 44, 48 (Pa. Cmwlth. 2011). Reasonable grounds exist when a person, in the position of the police officer, viewing the facts and circumstances as they appeared at the time of arrest, *could have concluded* that the motorist was operating a vehicle while under the influence of alcohol or controlled substances. *Banner v. Department of Transportation, Bureau of Driver Licensing*, 737 A.2d 1203, 1207 (Pa. 1999); *DiPaolo v. Department of Transportation, Bureau of Driver Licensing*, 700 A.2d 569, 572 (Pa. Cmwlth. 1997). The test for determining whether reasonable grounds exist is not very demanding and the officer need not be correct in his belief that the licensee was under the influence. *Farnack*, 29 A.3d at 48.

The question of whether reasonable grounds exist is a question of law reviewable on a case by case basis. *Banner*, 737 A.2d at 1207; *Farnack*, 29 A.3d at 48. There is no set list of behaviors that must be present for reasonable grounds to exist. *Stancavage v. Department of Transportation*, *Bureau of Driver Licensing*, 986 A.2d 895, 899 (Pa. Cmwlth. 2009). Our case law has identified factors that may constitute reasonable grounds, such as: slurred speech; staggering; swaying; and an odor of alcohol. *Id*. However, it does not follow that the absence of such factors does not constitute reasonable grounds to believe that a licensee has operated a vehicle while intoxicated. *Farnack*, 29 A.3d at 48.

Licensee argues that this case is analogous to our decision in *Schindler v. Department of Transportation, Bureau of Driver Licensing*, 976 A.2d 601 (Pa. Cmwlth. 2009). In *Schindler*, this Court held that a police officer did not have reasonable grounds to request a licensee to submit to chemical testing when the licensee was involved in a single-vehicle accident where the vehicle rolled over. The police officer discovered the licensee sitting on the side of the road, bleeding, and

9

unable to walk. The officer testified that he arrested the licensee because he failed three field sobriety tests and exhibited signs of intoxication; specifically, the licensee had difficulty maintaining his balance, an unsteady gait, and slurred speech. However, the licensee did not smell of alcohol or exhibit bloodshot or glassy eyes. Additionally, the officer acknowledged that there was no physical evidence of alcohol or controlled substances in the licensee's vehicle and conceded on cross-examination that the licensee had passed a breathalyzer test. The only indication of intoxication was the licensee's unsteady gait and difficulty maintaining his balance. We stated that the officer is "not free to pick and choose among the facts and rely exclusively on those that suggest DUI." *Id*. at 605. We concluded that the officer ignored that the reasonable explanation for the licensee's unsteady gait and balance problem was the accident itself and the evidence, taken as a whole, did not constitute reasonable grounds to believe that the licensee was driving under the influence.

Licensee asserts that the instant case is comparable to *Schindler* because some signs of impairment could be attributed to the accident itself instead of intoxication. Licensee argues that Officer Shannon did not consider all relevant facts and circumstances and only considered evidence that supported a finding of intoxication.

The instant case is distinguishable from our decision in *Schindler*. Here, as noted by the trial court in its opinion, Officer Shannon testified to several factors that led to his belief that Licensee was driving under the influence of alcohol and/or a controlled substance. Specifically, Officer Shannon testified that Licensee's speech was slurred, his eyes were glassy and bloodshot, and his pupils were constricted. (R.R. at 38, 43.) Officer Shannon further testified that he discovered an empty Oxycodone bottle in Licensee's vehicle and "detected a slight smell of alcohol" on

10

Licensee's breath while questioning him at the hospital.[8]  (R.R. at 40-41, 43.) Moreover, Officer Shannon noted that EMS expressed concern that Licensee was under the influence and multiple witnesses advised Officer Shannon that they had observed Licensee driving erratically for a number of miles before the accident occurred.[9]  (R.R. at 40-42.)  Based on this evidence, the trial court properly determined that a reasonable person in Officer Shannon's position would have reasonable grounds to believe that Licensee had been driving under the influence.

        Accordingly, the trial court's order is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

---

[8] Licensee emphasizes the fact that Officer Shannon first detected a slight odor of alcohol on Licensee's breath at the hospital despite his extended interaction with Licensee at the accident scene.  An officer may acquire reasonable grounds to believe that a licensee was driving under the influence at any time during the course of the interaction with the licensee. *Department of Transportation, Bureau of Traffic Safety v. Stewart*, 527 A.2d 1119, 1120 (Pa. Cmwlth. 1987). Moreover, it is well settled that the trial court maintains exclusive province over matters involving the weight afforded to the evidence when performing *de novo* review. *In re Penn-Delco School District*, 903 A.2d 600, 608 (Pa. Cmwlth. 2006).

[9] A police officer's reasonable grounds to believe that a motorist was driving under the influence can be based on information received from third parties. *Gasper v. Department of Transportation, Bureau of Driver Licensing*, 674 A.2d 1200, 1202 (Pa. Cmwlth. 1996).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David Lephew,                  :
         Appellant         :
                     :   No. 846 C.D. 2015
         v.           :
                     :
Commonwealth of Pennsylvania,   :
Department of Transportation,    :
Bureau of Driver Licensing      :

## ***ORDER***

AND NOW, this 9th day of February, 2016, the April 23, 2015 order of the Court of Common Pleas of 39th Judicial District, Franklin County Branch is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge