IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bryan Franklin Cash,                          :
                              Appellant      :
                                             :
              v.                             :      No. 1069 C.D. 2024
                                             :      Submitted:  October 7, 2025
Commonwealth of Pennsylvania,                :
Department of Transportation,                :
Bureau of Driver Licensing                   :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
          HONORABLE STACY WALLACE, Judge
          HONORABLE MARY HANNAH LEAVITT, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER          FILED:  February 24, 2026


        Bryan Franklin Cash (Cash) appeals the July 19, 2024 Order of the Court of
Common Pleas of Adams County (trial court), which dismissed his statutory appeal
from a one-year suspension of his driving privilege imposed by the Commonwealth
of Pennsylvania, Department of Transportation, Bureau of Driver Licensing
(Department).  The Department imposed the suspension under Section 1547 of the
Vehicle Code, 75 Pa.C.S. § 1547, commonly known as the Implied Consent Law,
because Cash refused to submit to chemical testing following his arrest for driving
under the influence (DUI) of a controlled substance, i.e., marijuana, in violation of
Section 3802 of the Vehicle Code, 75 Pa.C.S. § 3802.[1]  Cash argues the trial court

---

[1] Section 3802(d)(1)(i) of the Vehicle Code states that "[a]n individual may not drive,
operate or be in actual physical control of the movement of a vehicle" when, among others, "[t]here
**(Footnote continued on next page…)**

erred in dismissing his appeal because the Department did not establish that the police (1) had reasonable grounds to request a chemical test and (2) properly informed him of the consequences of refusing a chemical test. After review, the Court affirms the Order because the police (1) had reasonable grounds to conclude Cash operated a vehicle under the influence of a controlled substance and, thus, to request a chemical test, and (2) informed Cash of the consequences of refusing a chemical test in accordance with the Implied Consent Law.

## I. BACKGROUND

On March 3, 2023, the Department mailed a notice to Cash stating his driving privilege would be suspended for one year, effective April 7, 2023, for his refusal to submit to chemical testing following his arrest for DUI on February 16, 2023. Cash appealed the one-year suspension to the trial court, which held a de novo hearing on July 19, 2024.[2] At the hearing, the Department called Troopers Bradley Fornwalt and Dominic Schmidt of the Pennsylvania State Police (PSP) to testify as witnesses to the events that triggered the suspension.

Trooper Fornwalt, the arresting officer, testified as follows.[3] On the night of February 16, 2023, Trooper Fornwalt observed a passenger vehicle with "highly

---

is in the individual's blood any amount of a . . . Schedule I controlled substance, as defined in the [A]ct of April 14, 1972[, P.L. 233, *as amended*, 35 P.S. §§ 780-101–780-144], known as The Controlled Substance, Drug, Device and Cosmetic Act." 75 Pa.C.S. § 3802(d)(1)(i). Marijuana is a Schedule I controlled substance. Section 4(1)(iv) of The Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. § 780-104(1)(iv).

[2] Cash filed an appeal *nunc pro tunc* on April 21, 2023. By order dated April 24, 2023, the trial court scheduled a hearing on the appeal.

[3] Trooper Fornwalt, a PSP trooper for six years, received training on standardized field sobriety testing and Advanced Roadside Impaired Driver Enforcement, which relates to drugs, narcotics, and DUI.

2

tinted" windows, which is a possible violation of Title 67 of the Pennsylvania Code.[4] (Reproduced Record (R.R.) at 8a-9a.) Trooper Fornwalt then followed the vehicle for a short time, during which the vehicle moved "back and forth on the lines, in between the lines, and then . . . cross[ed] the right fog line" by "a couple of inches." (*Id.* at 10a, 18a.) At this time, Trooper Fornwalt initiated a traffic stop of the vehicle. In response, the driver of the vehicle "pulled over and got off as far as he could on the shoulder" of the road, using the turn signal and four-ways.[5] (*Id.* at 23a.)

Trooper Fornwalt approached the stopped vehicle from the rear, passenger side. While still a couple of feet away from the vehicle, Trooper Fornwalt "started smelling burnt marijuana." (*Id.* at 10a.) Trooper Fornwalt "confirmed that the odor of burnt marijuana was coming from within the vehicle" after directing the passenger to lower the passenger-side window. (*Id.*) Although the odor of burnt marijuana could have emanated from either occupant, Trooper Fornwalt noticed that Cash, the driver of the vehicle, "had glassy bloodshot eyes." (*Id.* at 11a, 26a.)

Trooper Fornwalt explained to the occupants that he stopped the vehicle because of the tinted windows. In response, Cash produced a "medical waiver out of Delaware for the window tint." (*Id.* at 11a.) Trooper Fornwalt attempted to explain that medical waivers in Pennsylvania require colorless tint, but "[i]t just led to a heated argument." (*Id.*) "[B]ecause of the heated situation," Trooper Fornwalt called and waited for backup to arrive. (*Id.* at 12a.)

---

[4] The Department's regulations generally prohibit light transmittance levels below 70% for windows of passenger vehicles. 67 Pa. Code § 175.67(d)(4); 67 Pa. Code 175, Table X.

[5] On cross-examination, counsel for Cash submitted into evidence and played a video of the traffic stop from the Motor Vehicle Recorder (MVR) in Trooper Fornwalt's patrol vehicle. Trooper Fornwalt generally agreed that the MVR accurately portrayed the events in question but specifically disagreed "that the vehicle was not weaving within its lane," stating that "it did a little." (R.R. at 22a.)

3

Once backup arrived, Trooper Fornwalt asked Cash and the passenger to exit the vehicle. The passenger complied, but Cash refused. After directing Cash to exit the vehicle for approximately 5 to 10 minutes, Trooper Fornwalt attempted "to pull him out and pry his hand off the steering wheel," while another PSP trooper tried to "push him out" from the passenger side. (*Id.* at 13a.) Unsuccessful, Trooper Fornwalt warned Cash that he would be tased if he did not exit the vehicle. Cash still refused. Consequently, Trooper Fornwalt tased Cash on the left thigh, causing Cash to release his grip from the steering wheel. Another PSP trooper handcuffed Cash and placed him in Trooper Fornwalt's patrol vehicle. The PSP troopers did not conduct field sobriety tests because of Cash's behavior.

When speaking with Cash in the patrol vehicle, Trooper Fornwalt detected "the odor of burnt marijuana coming from his person." (*Id.* at 14a.) Although Cash "denied consuming marijuana," Trooper Fornwalt explained that he smelled marijuana coming from Cash's breath:

> Based on my experience with marijuana[,] even when somebody that gets out of the car who just reeks of weed, you don't get a strong odor coming from clothing. It doesn't stay on clothing like that. So based off of [Cash] yelling at me and I was in close proximity, within a couple of feet, it was coming from his breath.

(*Id.* at 27a.) Moreover, Cash "had [] green residue on his tongue," which Trooper Fornwalt is trained to look for as an indicator of marijuana. (*Id.* at 27a-28a.) While Cash did not slur his speech during this interaction, Trooper Fornwalt explained that slurred speech is "not a clue of marijuana." (*Id.* at 24a.) Nevertheless, Trooper Fornwalt noticed the "irateness" in Cash's speech. (*Id.*) Finally, during this time, PSP troopers conducted a consensual search of Cash's vehicle, discovering "a bag of marijuana in the back seat." (*Id.* at 14a.)

4

Accompanied by Trooper Schmidt, Cash then went to a hospital via ambulance. Meanwhile, Trooper Fornwalt returned to his station to draft criminal charges. Thereafter, Trooper Fornwalt called Trooper Schmidt and requested that he read to Cash the Department's DL-26B Implied Consent Warnings Form (DL-26B Form).[6] Trooper Schmidt read the DL-26B Form to Cash but Trooper Fornwalt completed and signed the affidavit portion of the Form (DL-26B Affidavit).[7] When asked why he completed the DL-26B Affidavit, Trooper Fornwalt stated he believed that as the arresting officer, he was required to complete the affidavit and that "the trooper who read the DL[-26B Form] was just listed at the bottom." (*Id.* at 16a.)

Next, the Department called Trooper Schmidt. Trooper Schmidt testified that he arrived at the traffic stop after Cash was arrested and accompanied Cash in the ambulance to the hospital. When at the hospital, Trooper Fornwalt asked Trooper Schmidt to read the DL-26B Form to Cash. Subsequently, Trooper Schmidt read the DL-26B Form to Cash and asked him to submit to chemical testing. Cash refused. Trooper Schmidt thus signed the DL-26B Form in two places to certify that he read the implied consent warnings in the Form to Cash and that Cash refused chemical testing after being advised of the consequences.

After the hearing, the trial court entered the Order dismissing Cash's statutory appeal and reinstating the suspension. In an opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925, Pa.R.A.P. 1925, the trial court reasoned that Trooper Fornwalt had reasonable grounds to conclude Cash violated Section 3802 of the

---

[6] "A DL-26 Form is used by Pennsylvania law enforcement to advise drivers of the consequences of refusing to submit to chemical testing under Section 1547 of the Vehicle Code." *Palitti v. Dep't of Transp., Bureau of Driver Licensing*, 331 A.3d 96, 104 n.8 (Pa. Cmwlth. 2024). The Department submitted into evidence a copy of the completed DL-26B Form read to Cash.

[7] The DL-26B Affidavit "verifies that police complied with the requirements of the Implied Consent Law, including the reading of the [i]mplied [c]onsent [w]arnings to a licensee." *Scott v. Dep't of Transp., Bureau of Driver Licensing*, 342 A.3d 773, 781-82 (Pa. Cmwlth. 2025).

Vehicle Code and request chemical testing based on his credible testimony. The trial court further reasoned that the Department proffered sufficient, credible evidence to establish that Trooper Schmidt read the DL-26B Form to Cash and that Cash refused the requested chemical testing. Cash now appeals to this Court.[8]

## II. DISCUSSION

To sustain a suspension of a licensee's driving privileges under Section 1547 of the Vehicle Code, the Department must establish

> that the licensee: (1) was arrested for driving under the influence by a police officer who had reasonable grounds to believe the licensee was under the influence of alcohol or a controlled substance; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was warned that the refusal would result in a license suspension.

*Farnack v. Dep't of Transp., Bureau of Driver Licensing*, 29 A.3d 44, 48 (Pa. Cmwlth. 2011). Here, Cash argues the Department did not establish that the police (1) had reasonable grounds to request that Cash submit to a chemical test of his blood and (2) properly informed Cash of the consequences of refusing a request for chemical testing. For these reasons, Cash asserts the trial court erred in dismissing his appeal and reinstating the license suspension.

---

[8] "Our review is limited to determining whether the trial court's findings are supported by substantial evidence, errors of law have been committed, and the trial court's determinations demonstrate an abuse of discretion." *Palitti*, 331 A.3d at 105 n.11. "Whether reasonable grounds exist is a question of law subject to our plenary review." *Id.* at 107 (citation omitted). Similarly, "[t]he question of whether a licensee refuses to submit to a chemical test is a legal one subject to plenary review on appeal." *Park v. Dep't of Transp., Bureau of Driver Licensing*, 178 A.3d 274, 281 (Pa. Cmwlth. 2018).

*A. Reasonable Grounds*

We begin with whether the police had reasonable grounds to conclude that Cash operated a vehicle under the influence of alcohol or a controlled substance and request that Cash submit to a chemical test. Cash argues that the police lacked reasonable grounds because it is unclear based on the record whether Cash drove erratically before the traffic stop. The Department retorts that when viewing the totality of the circumstances, the police had reasonable grounds to conclude that Cash operated a vehicle under the influence. We agree with the Department.

Police have reasonable grounds "when a person, in the position of the police officer, viewing the facts and circumstances as they appeared at the time of the arrest, could have concluded that the licensee was operating a vehicle while under the influence of alcohol or controlled substances." *Farnack*, 29 A.3d at 48 (citation omitted). Because "there are [] no bright line indicators" of intoxication, "this Court considers the totality of the circumstances to determine, as a matter of law, whether a person in the position of the arresting officer could reasonably have reached this conclusion." *Palitti v. Dep't of Transp., Bureau of Driver Licensing*, 331 A.3d 96, 107-08 (Pa. Cmwlth. 2024) (citations omitted). "The test for reasonable grounds is not very demanding, and it is not necessary for the police officer to be correct in his or her belief." *Bergenstock v. Dep't of Transp., Bureau of Driver Licensing*, 311 A.3d 1201, 1204 (Pa. Cmwlth. 2024) (citation omitted). In some combination, this Court has held that swaying, staggering, or falling down, belligerent or uncooperative behavior, glassy or bloodshot eyes, slurred speech, the odor of controlled substances, and erratic driving, among others, are sufficient indicators to establish reasonable grounds in controlled substance cases. *See, e.g.*, *Farnack*, 29 A.3d at 48-49; *Fleet v. Dep't of Transp., Bureau of Driver Licensing* (Pa. Cmwlth.,

7

No. 1025 C.D. 2021, filed Nov. 7, 2022), slip op. at 9-10; *Jones v. Dep't of Transp., Bureau of Driver Licensing* (Pa. Cmwlth., No. 837 C.D. 2020, filed Oct. 19, 2021), slip op. at 8; *Barnes v. Dep't of Transp., Bureau of Driver Licensing* (Pa. Cmwlth., No. 1300 C.D. 2015, filed Sept. 8, 2016), slip. op. at 10.[9]

Here, even without considering whether Cash drove erratically, the police had reasonable grounds to conclude that Cash operated a vehicle under the influence of marijuana and, thus, request chemical testing. To start, Trooper Fornwalt detected the odor of burnt marijuana coming from Cash's breath and inside his vehicle. Trooper Fornwalt also noticed that Cash "had glassy bloodshot eyes" and "green residue on his tongue." (R.R. at 11a, 26a-28a.) Additionally, Cash acted in an irate and uncooperative manner, including his refusal to exit his vehicle despite numerous requests over an approximately 5- to 10-minute period, the attempt to pull him from the vehicle by PSP troopers, and Trooper Fornwalt's warning that he would be tased if he did not cooperate. Moreover, during a consensual search, PSP troopers discovered a bag of marijuana in Cash's vehicle. Given the totality of the foregoing testimony, which the trial court found credible, the police had reasonable grounds to conclude that Cash operated a vehicle under the influence of marijuana. *See Farnack*, 29 A.3d at 48-49; *Fleet*, slip op. at 9-10; *Jones*, slip op. at 8; *Barnes*, slip. op. at 10. Because licensees may not operate vehicles with "any amount" of marijuana in their blood, the police also had reasonable grounds to request that Cash submit to chemical testing. *See Fleet*, slip op. at 7, 9-10; *Jones*, slip op. at 6, 11; *Barnes*, slip. op. at 8, 10. Therefore, the trial court did not err in concluding that the Department established reasonable grounds to request a chemical test.

---

[9] Unreported panel decisions of this Court may be cited for their persuasive value pursuant to Pennsylvania Rule of Appellate Procedure 126(b), Pa.R.A.P. 126(b), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

*B. Implied Consent Warnings*

Next, we turn to whether the Department established that the police informed Cash of the consequences of refusing the requested chemical test. Cash argues that the police did not properly inform him of the consequences of refusing the chemical test because Trooper Fornwalt, who executed the DL-26B Affidavit, did not inform Cash of the implied consent warnings or witness a refusal. Instead, Trooper Schmidt testified that he read the implied consent warnings contained in the DL-26B Form to Cash and witnessed his refusal to submit to chemical testing. Because the record does not reflect that Trooper Fornwalt had any information as to whether Trooper Schmidt read the implied consent warnings or Cash refused chemical testing, Cash asserts the DL-26B Affidavit is defective. For these same reasons, Cash argues the Department lacked notice that a police officer read the implied consent warnings to him and that he refused chemical testing to trigger a license suspension under Section 1547 of the Vehicle Code.

Relevantly, Section 1547(a) of the Vehicle Code provides that

> [a]ny person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle in violation of [S]ection . . . 3802 [of the Vehicle Code] (relating to driving under influence of alcohol or controlled substance) . . . .

75 Pa.C.S. § 1547(a). "If any person placed under arrest for a violation of [S]ection 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the [D]epartment shall suspend the operating privilege of the person" for a defined period of time.

9

75 Pa.C.S. § 1547(b)(1). It is "the duty of the police officer to inform the person that," among other things, "the person's operating privilege will be suspended upon refusal to submit to chemical testing." 75 Pa.C.S. § 1547(b)(2)(i). "Once a police officer provides the implied consent warnings to a motorist, the officer has done all that is legally required to ensure the motorist is fully advised of the consequences of her failure to submit to chemical testing." *Park v. Dep't of Transp., Bureau of Driver Licensing*, 178 A.3d 274, 281 (Pa. Cmwlth. 2018). Indeed, "[a]ll that is required is that the officer read the warnings to the licensee and that the licensee be given a meaningful opportunity to comply with the Implied Consent Law." *Id.*

To aid police officers in their duty to read the implied consent warnings to persons suspected of DUI, the Department created the DL-26B Form. *Scott v. Dep't of Transp., Bureau of Driver Licensing*, 342 A.3d 773, 781 (Pa. Cmwlth. 2025). As this Court has held, "a reading of the DL-26 Form sufficiently apprises the driver, either hearing or reading it, that if she refuses to submit to the chemical test, her operating privileges will be suspended." *Park*, 178 A.3d at 281. However, "it is the Implied Consent Law, and not the DL-26B Form, that imposes both the obligation on the police to provide a motorist with the [i]mplied [c]onsent [w]arnings and the consequences for a motorist who refuses to submit to chemical testing after receiving the warnings." *Scott*, 342 A.3d at 780-81. Thus, while a completed DL-26B Form can evidence that police officers complied with their duty under Section 1547 of the Vehicle Code, "the failure of the police to properly fill out the DL-26B Form does not negate or render defective otherwise adequate [i]mplied [c]onsent [w]arnings provided to a motorist pursuant to the Implied Consent Law." *Id.* at 781.

Here, the record establishes that the police informed Cash of the consequences of refusing the requested chemical test in accordance with the Implied Consent Law.

10

Trooper Schmidt testified that he read the implied consent warnings contained in the DL-26B Form to Cash, and Cash refused to submit to the requested chemical test. In addition to Trooper Schmidt's testimony, which the trial court found credible, the Department submitted into evidence the DL-26B Form read to Cash. The DL-26B Form shows that Trooper Schmidt signed certifications that (1) he read the implied consent warnings to Cash and gave Cash the opportunity to submit to a chemical test, and (2) Cash refused testing after being advised on the consequences. (R.R. at 42a.) Therefore, the Department established that the police informed Cash of the consequences of refusing the requested chemical test.

This conclusion is not altered by the fact that Trooper Fornwalt is the party that executed the DL-26B Affidavit confirming that the implied consent warnings were read to Cash and that Trooper Schmidt witnessed Cash's refusal to submit to a chemical test, as Cash argues. This Court recently explained that

> [t]he DL-26B Affidavit is a certification that the operator who has been asked to submit to chemical testing was placed under arrest on suspicion of DUI and was requested to submit to chemical testing, that the operator was read the implied consent warnings "by a police officer," and that the operator refused the request to submit to chemical testing.[] . . . By its language, the DL-26B Form's Affidavit requires, consistent with the Implied Consent Law, that the refusal warnings be read "by a police officer," but **does not require that officer to be the same officer who executes the Affidavit**.

*Scott*, 342 A.3d at 782 (emphasis added). As discussed above, the record evidence shows that Trooper Schmidt credibly testified that he read the implied consent warnings to Cash. Thus, regardless of the fact that Trooper Fornwalt executed the DL-26B Affidavit, the Department established that the police informed Cash of the implied consent warnings. *See id.*

11

Cash further argues that the Department lacked the notice needed to suspend his driving privileges because the DL-26B Affidavit was defective as Trooper Fornwalt was not privy to the implied consent warnings read by Trooper Schmidt. We disagree. To reiterate,

> [t]he DL-26B Affidavit is a certification that the operator who has been asked to submit to chemical testing was placed under arrest on suspicion of DUI and was requested to submit to chemical testing, that the operator was read the implied consent warnings "by a police officer," and that the operator refused the request to submit to chemical testing.

*Id.* Trooper Fornwalt had the requisite knowledge, information, and belief to certify the above in the instant case. Trooper Fornwalt arrested Cash on suspicion of DUI. Furthermore, Trooper Fornwalt asked Trooper Schmidt to read the implied consent warnings to Cash and request chemical testing. Based on Trooper Schmidt's signed certifications in the DL-26B Form, Trooper Fornwalt had reason to believe that Trooper Schmidt in fact read the implied consent warnings to Cash, requested Cash submit to a chemical test, and Cash refused testing despite being advised of the consequences. Accordingly, the DL-26B Affidavit is not defective, and the Department had sufficient notice to trigger the mandatory license suspension under Section 1547(b)(1) of the Vehicle Code.

In summary, "the DL-26B Form is . . . not a requirement of the Implied Consent Law without which a license suspension for a refusal to submit to requested chemical testing cannot proceed, or an error that renders defective the [i]mplied [c]onsent [w]arnings given by police." *Scott*, 342 A.3d at 782. Rather, the DL-26B Form is "one piece of evidence to be employed, if needed, to illustrate police compliance with the requirements of the Implied Consent Law, and is a piece of evidence that can be supplemented by other evidence." *Id.* As discussed above, the

12

Department produced testimony from Trooper Schmidt that he read the implied consent warning to Cash and that Cash refused the requested chemical test. Trooper Schmidt's testimony is buttressed by the DL-26B Form submitted into evidence, which reflects that Trooper Schmidt certified that he read the implied consent warnings to Cash, provided Cash with an opportunity to comply, and Cash refused the requested testing. Therefore, the trial court did not err in concluding that the Department established that the police informed Cash of the consequences of refusing the requested chemical test.

## III. CONCLUSION

For the foregoing reasons, the Court affirms the trial court's Order.

_____
RENÉE COHN JUBELIRER, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bryan Franklin Cash,          :
          Appellant     :
                     :
          v.        :   No. 1069 C.D. 2024
                     :
Commonwealth of Pennsylvania,   :
Department of Transportation,    :
Bureau of Driver Licensing      :

# **O R D E R**

NOW, February 24, 2026, the July 19, 2024 Order of the Court of Common Pleas of Adams County is **AFFIRMED**.

_____
RENÉE COHN JUBELIRER, President Judge