**Derek Daniel SCHINDLER**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 19, 2008.

Decided June 1, 2009.

Terrance M. Edwards, Asst. Counsel and Harold H. Cramer, Asst. Chief Counsel, Harrisburg, for appellant.

No appearance entered on behalf of appellee.

BEFORE: SMITH–RIBNER, Judge, and LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge LEAVITT.

The Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (Department), appeals an order of the Court of Common Pleas of Allegheny County (trial court) that sustained the appeal of Derek Daniel Schindler (Schindler) from a one-year suspension of his operating privileges for refusal to submit to chemical testing. Concluding that the arresting officer lacked reasonable grounds to believe that Schindler had been operating his vehicle under the influence of alcohol, we affirm.

On August 28, 2007, Schindler was charged with driving under the influence of alcohol or controlled substance in violation of Section 3731 of the Vehicle Code, 75 Pa.C.S. § 3731. On September 20, 2007, the Department notified Schindler that his operating privileges would be suspended for one year as a result of his refusal to submit to chemical testing on August 28, 2007, which violated Section 1547(b)(1)(i) of the Vehicle Code, 75 Pa.C.S. § 1547(b)(1)(i).[1] Schindler appealed to the trial court, and on April 17, 2008, the trial court held a *de novo* hearing.

The Department presented the testimony of Patrolman David Sciullo, a seven-year veteran of the Ross Township Police Department. Officer Sciullo testified that on August 28, 2007, at 3:15 a.m., he was dispatched to a single vehicle rollover accident. Officer Sciullo arrived at the accident scene at 3:21 a.m., and found a red Chevrolet Cavalier on its roof in the middle of the roadway. Schindler, who was 22 years old at the time, was outside of the vehicle sitting on the side of the roadway.

---

1. Section 1547(b)(1)(i) states:
   (b) Suspension for refusal.—
   (1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:
   (i) Except as set forth in subparagraph (ii), for a period of 12 months.
   75 Pa.C.S. § 1547(b)(1)(i).

According to Officer Sciullo, Schindler stated that he had been driving home from a friend's house and the next thing he remembered was the car had flipped over. Schindler believed he had fallen asleep at the wheel. Reproduced Record at 18a (R.R. ___). Officer Sciullo testified that Schindler did not want to be taken to the hospital for treatment. Officer Sciullo stated that Schindler's speech was slurred, his gait was unsteady and he had trouble maintaining his balance. Officer Sciullo did not recall seeing any injuries on Schindler.

Officer Sciullo requested that Schindler perform three field sobriety tests: the walk-and-turn, the one-leg stand, and the finger-to-nose test. Schindler failed each test. Concluding that Schindler was under the influence of alcohol or a controlled substance, Officer Sciullo handcuffed Schindler, placed him into the patrol car and advised him he was under arrest for DUI. Officer Sciullo further advised Schindler of the standard chemical test warnings, including that his operating privilege could be suspended for one year if he refused to consent.

Schindler initially agreed to the chemical test and was transported to UPMC Passavant Hospital. However, Schindler changed his mind. When they arrived at the hospital, Officer Sciullo read the warnings from Form DL–26 verbatim to Schindler. Schindler refused either to be tested or to sign the form. Schindler was then transported to the police station and detained overnight.

On cross-examination, Officer Sciullo was shown five photos of Schindler taken after the accident that showed cuts and bruises on his head, knees and feet. Officer Sciullo stated that he did not recall seeing these injuries after the accident but acknowledged that it was still dark when he arrived on the scene. Upon further questioning, Officer Sciullo admitted that he administered a Breathalyzer test to Schindler at the scene, and the test ruled out the presence of alcohol in Schindler's system. Officer Sciullo also acknowledged that he searched Schindler's vehicle for pills, vials and illicit drugs but found nothing. He also acknowledged the absence of track marks on Schindler's arms. Finally, Officer Sciullo acknowledged that Schindler's car had rolled over and that broken glass was strewn around the interior of the car. Although Officer Sciullo did not recall observing injuries to Schindler's feet, he did recall that Schindler was wearing sandals.

Officer Sciullo further acknowledged on cross-examination that when Schindler was released from jail the next morning, his mother transported him to UPMC St. Margaret, where Schindler was examined and underwent, *inter alia,* a urinanalysis. Officer Sciullo conceded that the emergency room report showed that testing had ruled out any alcohol or illegal controlled substances in Schindler's blood, and that he had sustained a closed head trauma and other injuries in the motor vehicle accident.

Schindler offered the testimony of his mother, who picked him up from the police station, took the photographs of his injuries and then transported him to UPMC St. Margaret. Mrs. Schindler testified that when she picked up her son, he was still woozy; his face was swollen; he had blood on his shirt; his knees and feet were cut and bloody; and he had extracted some glass from his cuts. R.R. 32a. According to Mrs. Schindler, her son had suffered a concussion and she was instructed to observe her son for symptoms of a head injury and monitor his sleep. The emergency room report was offered

into evidence.[2]

The trial court sustained Schindler's appeal, concluding that Officer Sciullo did not have reasonable grounds to believe that Schindler was operating his vehicle while under the influence of alcohol or a controlled substance. The trial court also held that Schindler proved he was incapable of making a knowing and conscious decision to refuse chemical testing of his blood. The Department now appeals.[3]

On appeal, the Department contends that the trial court erred in holding that Officer Sciullo did not have reasonable grounds to believe Schindler had committed a DUI offense. It contends that it is irrelevant that chemical testing later ruled out the possibility that Schindler was operating his vehicle under the influence of alcohol or drugs.[4] Schindler had a duty to consent to the testing upon request of Officer Sciullo. The Department argues that Officer Sciullo had grounds to request the test given Schindler's slurred speech, unsteady gait and failure to pass the walk-and-turn, one-leg stand and finger-to-nose sobriety tests.

To establish that a suspension of operating privileges was proper, the Department must prove at a statutory appeal hearing that the licensee (1) was arrested for driving while under the influence by a police officer who had reasonable grounds to believe that the licensee was operating a vehicle while under the influence of alcohol or a controlled substance, (2) was asked to submit to a chemical test, (3) refused to do so, and (4) was warned that a refusal would result in a license suspension. *Banner v. Department of Transportation, Bureau of Driver Licensing*, 558 Pa. 439, 445, 737 A.2d 1203, 1206 (1999). "Reasonable grounds exist when a person in the position of the police officer, viewing the facts and circumstances as they appeared at the time, could have concluded that the motorist was operating the vehicle while under the influence of intoxicating liquor." *Id.* at 446, 737 A.2d at 1207. Whether reasonable grounds exist is a question of law reviewable by this Court on a case by case basis. *Id.*

The Department argues its evidence established that Schindler's speech was slurred, his gait was unsteady, he had trouble maintaining his balance, and he

2. The emergency room report, which was admitted, shows that Schindler was in the emergency room at "4:06:22 PM," thirteen hours after the accident. R.R. 42a. It further shows that a urine, not a blood, test was done, which was positive for "benzodiazepine at 300." Schindler explained that he had taken an "antianxiety drug on Saturday." R.R. 41a. The report indicated "no sign of real trauma. Eyes are also negative." *Id.* Schindler's discharge diagnosis was: "1. One-car motor vehicle accident with head, neck, and face injury. 2. Multiple contusions and abrasions." *Id.* Schindler was discharged into his mother's care with instructions for her to make head injury checks for the next twenty-four hours. *Id.*

3. Our review is limited to determining whether the trial court's findings are supported by

substantial evidence and whether it committed an error of law or abused its discretion. *Department of Transportation, Bureau of Driver Licensing v. Moss*, 146 Pa.Cmwlth. 330, 605 A.2d 1279, 1281 (1992).

4. We agree with the dissent that it is irrelevant that the later-administered hospital blood test ruled out the presence of alcohol or illegal controlled substances in Schindler's system. As explained more fully in this opinion, reasonable grounds to believe a DUI offense has occurred must be based on the facts and circumstances at the time of the interaction between the motorist and the arresting officer, not what the officer later learns. Nevertheless, whether those facts and circumstances constitute reasonable grounds to arrest the operator is a question of law subject to appellate review.

failed the field sobriety tests. These facts, it contends, were sufficient to authorize Schindler's arrest for DUI. These facts have been found to constitute reasonable grounds for a DUI arrest, particularly when combined with bloodshot eyes and the smell of alcohol on the driver of the vehicle. *See, e.g., Stein v. Department of Transportation, Bureau of Driver Licensing*, 857 A.2d 719, 726 n. 12 (Pa.Cmwlth. 2004) (citing licensee's "unsteadiness as he walked to the rear of his BMW; the strong odor of alcoholic beverage; Licensee's bloodshot and glassy eyes; his slurred speech and his failure of three sobriety tests."). Here, there was neither the smell of alcohol on Schindler nor the presence of glassy or bloodshot eyes. What is more important, however, is the other evidence in the record that is simply ignored by the Department, including the remainder of Officer Sciullo's testimony. The evidence as a whole, even when taken together with the testimony highlighted by the Department, defeats the Department's argument that Officer Sciullo had reasonable grounds to believe Schindler was intoxicated.

Officer Sciullo testified selectively about the events of August 28, 2007. Only when questioned on cross-examination did he acknowledge that Schindler agreed to a preliminary breath test (PBT) at the accident scene, which produced a negative result for alcohol. The very purpose of the PBT is to aid an officer in determining whether an individual should be placed under arrest. 75 Pa.C.S. § 1547(k).[5] Additionally, the officer's thorough search of Schindler's vehicle uncovered no evidence of alcohol or controlled substances, nor was any such evidence found on Schindler's person. This lack of physical evidence plus the negative PBT means that the only indicator of intoxication was Schindler's unsteady gait and difficulty maintaining balance. The reasonable explanation for Schindler's balance problem was the accident itself. Schindler had literally just crawled out of his overturned vehicle following a violent rollover accident that caused cuts to his head, legs and feet, not to mention psychological trauma.[6] Given these circumstances, Schindler's difficulty performing the one-leg stand and walk-and-turn tests is hardly surprising and was insufficient to constitute reasonable grounds to arrest Schindler for DUI.

Implicit to the Supreme Court's directive that the arresting officer look at the "facts and circumstances as they appeared at the time" is that all facts and circumstances be considered, not just those that suggest DUI. *Banner*, 558 Pa. at 446, 737 A.2d at 1207. Stated otherwise, an officer is not free to pick and choose among the facts and rely exclusively on those that suggest DUI. *Banner* and its progeny do not stand for the principle

---

**5.** It states:

(k) Prearrest breath test authorized.—A police officer, having reasonable suspicion to believe a person is driving or in actual physical control of the movement of a motor vehicle while under the influence of alcohol, may require that person prior to arrest to submit to a preliminary breath test on a device approved by the Department of Health for this purpose. *The sole purpose of this preliminary breath test is to assist the officer in determining whether or not the person should be placed under arrest.* The preliminary breath test shall be in addition to any other requirements of this title. No person has any right to expect or demand a preliminary breath test. Refusal to submit to the test shall not be considered for purposes of subsections (b) and (e).

75 Pa.C.S. § 1547(k) (emphasis added).

**6.** The photographic and documentary evidence offered at the hearing showed that Schindler had sustained abrasions and contusions to his head, knees and feet from the accident.

that the officer need only consider evidence that supports probable intoxication, such as unsteadiness, while overlooking evidence that may explain the unsteadiness and disregarding exculpatory evidence, such as a negative Breathalyzer test. On the narrow facts presented in this case, this Court holds that it was not reasonable for Officer Sciullo to believe that Schindler had operated his motor vehicle under the influence of alcohol or a controlled substance. We therefore affirm the order of the trial court on that basis.[7]

## ORDER

AND NOW, this 1st day of June, 2009, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter, dated April 17, 2008, is AFFIRMED.

DISSENTING OPINION BY Senior Judge FLAHERTY.

I respectfully dissent to the Majority's decision which concludes that the arresting officer lacked reasonable grounds to believe that Derek Daniel Schindler (Schindler) had been operating his vehicle under the influence of alcohol.

The Department of Transportation, Bureau of Driver Licensing (Department) appeals from a decision of the Court of Common Pleas of Allegheny County (trial court) which sustained the appeal of Schindler from a one-year suspension of his operating privileges for refusal to submit to chemical testing, pursuant to Section 1547(b)(1)(i) of the Vehicle Code, 75 Pa. C.S. § 1547(b)(1)(i).

Pursuant to 75 Pa.C.S. § 1547(b)(1), it was necessary for the Department to prove that Schindler was arrested for a violation of 75 Pa.C.S. § 3802 by a police officer who had reasonable grounds to believe that Schindler was operating or was in actual physical control of the movement of a vehicle while under the influence of alcohol or drugs. The trial court determined that Officer Sciullo did not have such reasonable grounds. "Whether reasonable grounds exist is a question of law reviewable by this court on a case-by-case basis." *Wilson v. Commonwealth*, 53 Pa. Cmwlth. 342, 417 A.2d 867 (1980). "Reasonable grounds exist when a person in the position of the police officer, viewing the facts and circumstances as they appeared at the time, could have concluded that the motorist was operating the vehicle while under the influence of intoxicating liquor." *Banner v. Department of Transportation, Bureau of Driver Licensing*, 558 Pa. 439, 446, 737 A.2d 1203, 1207 (1999). Also, the police officer need not be correct in his belief. *Department of Transportation, Bureau of Driver Licensing v. Gonzalez*, 110 Pa.Cmwlth. 379, 532 A.2d 533 (1987).

We are dealing here with the authority to request a person to submit to a chemical test and not with the admission into evidence of the result of such a test. The only valid inquiry on this issue at the de novo hearing is whether, viewing the facts and circumstances as they appeared at the time, a reasonable person in the position of the police officer could have concluded that the motorist was operating the vehicle and under the influence of intoxicating liquor. Thus, **it is not relevant that the motorist later, at the time of trial, can establish a cause other than intoxication for such observed behavior as slurred speech or an unsteady gait. At trial, the only**

---

**7.** Because we agree with the trial court that Officer Sciullo lacked reasonable grounds to arrest Schindler for DUI, we need not address the Department's argument that Schindler failed to prove he was not capable of making a knowing and conscious refusal to submit to chemical testing.

**relevant factual defense would be a showing that the motorist's behavior was not, in fact, as the officer testified.** (Emphasis added).

*Department of Transportation, Bureau of Traffic Safety v. Dreisbach,* 26 Pa.Cmwlth. 201, 363 A.2d 870, 872 (1976).

Officer Sciullo observed sufficient indicia of intoxication that reasonably could have led him to believe that Schindler was driving under the influence of drugs or alcohol. Officer Sciullo testified that he observed Schindler's car on its roof, after having rolled over in a single-car accident at 3 a.m., that Schindler was seated next to the car, that Schindler stated that he fell asleep behind the wheel, that his speech was slurred and his gait was unsteady, that Schindler passed the preliminary breath test (which may rule out the presence of alcohol, but does not rule out the presence of drugs), but failed the walk and turn, the one-leg stand and the finger to nose test. Further, Officer Sciullo observed that Schindler refused all medical treatment from the paramedics and refused to be transported to the hospital for treatment.

The trial court determined that based on the severity of the accident, a head injury was more likely and once Officer Sciullo determined that the preliminary breath test was negative, that Officer Sciullo did not have reasonable grounds to believe that Schindler was operating a vehicle while under influence of alcohol or a controlled substance. The trial court stated that "[g]iven the negative read on Schindler's PBT, Officer Sciullo should have reasonably ruled out DUI since he entered the scene of such an obviously grave car accident. It was **more likely than not** that Schindler had been traumatized. His car was on its roof." (Trial court opinion at 4)(Emphasis added).

However, "the test for determining whether or not an officer has reasonable grounds" ... is not very demanding, and the officer need not be correct in his belief. *Gonzalez,* 532 A.2d at 534. In *McCallum v. Commonwealth,* 140 Pa. Cmwlth. 317, 592 A.2d 820 (1991), we determined that "the police officer's reasonable grounds will not be rendered void even if the belief is later discovered to be erroneous.... The police officer's belief must only be objective in light of the surrounding circumstances, and 'the existence of reasonable alternative conclusions does not necessarily preclude the arresting officer's actual belief from being reasonable.' " *Id.,* 592 A.2d at 822 (citations omitted).

In the present controversy, the police officer believed that Schindler was operating a motor vehicle while under the influence of a controlled substance, due to his refusal of medical help, his slurred speech, his unsteady gait, and due to the fact that it was a one-car accident at 3:00 a.m. Although it was reasonable to believe, as the trial court did, that the head injury could have caused Schindler's unusual actions, the police officer's belief is also reasonable. There were two possible grounds for Schindler's behavior. The law only requires "reasonable grounds" for the police officer's belief. The statute does not make the officer's belief unreasonable because there could be another cause for the actions of the vehicle operator. Thus, the trial court erred in determining that it was an unreasonable belief.

Next, the Department contends that the trial court erred as a. matter of law in determining that Schindler had satisfied his burden of proof that he was incapable of making a knowing and conscious refusal of chemical testing of his blood.

Once the Department satisfies its burden of proving that Schindler was arrested for operating a vehicle in violation of 75

Pa.C.S. § 3802, was asked to submit to a chemical test, refused to submit to such test and was specifically warned that a refusal to submit to such testing would result in the suspension of his operating privileges for a period of twelve months, the burden shifts to Schindler. Schindler must prove that he was physically incapable of completing the chemical test or that his refusal was not knowing and conscious. *Martinovic v. Department of Transportation, Bureau of Driver Licensing*, 881 A.2d 30, 34 (Pa.Cmwlth.2005).

The trial court determined that Schindler satisfied his burden of proving that he could not make a knowing and conscious decision when he refused the chemical testing. The trial court stated:

> In the present case, hindsight confirms that Schindler was not driving under the influence of any illicit substance. To punish him with a suspension for refusal would be worse than pouring salt into his wounds, since chemical testing was performed and Schindler's blood was clean. It is also inappropriate since his head injury at the time might likely have prevented him from making a *knowing and conscious* refusal necessary to warrant suspension. *Cartwright v. Commonwealth*, 138 Pa.Cmwlth. 325, 587 A.2d 909 (1991). (Emphasis in original).

Trial Court Opinion, August 18, 2008, at 3–4.

In *Commonwealth v. Passarella*, 7 Pa. Cmwlth. 584, 300 A.2d 844 (1973), James Passarella (Passarella) was discovered behind the wheel of a car which had just been in an accident. Passarella was taken to a hospital, examined and released. He was then charged with driving under the influence and asked to take a breathalyzer test and subsequently, a blood test. He refused to take both tests. At a hearing to contest his license suspension, Passarella testified that he had no recollection of the events surrounding the accident, including being asked to take the tests. Over objection of counsel, Passarella presented the testimony of Herbert F. Homes, a man who operates an independent service of producing hospital records for court. Homes testified that the diagnosis on Passarella's record was "multiple abrasions, possible cerebral concussion." *Id.* 300 A.2d at 586. The Commonwealth objected to Homes testimony, as he lacked the qualifications necessary to testify about such records. The trial court determined that Passarella suffered a cerebral concussion and, therefore did not make a knowing and conscious refusal. Our court reversed the trial court and determined in pertinent part as follows:

> No medical doctor testified that appellee suffered an actual concussion; no medical evidence was introduced as to what effects such a concussion would have had on appellee after he was released from the hospital. Testimony as to appellee's medical "record" were of doubtful validity and merely indicated that a "possible" concussion occurred.... Certainly every "act, condition or event" which some hospital physician places in a hospital record does not ipso facto become competent when later an issue is being judicially tried to which such fact would be relevant if proved by competent testimony. (Emphasis and citations omitted).

*Id.*, 300 A.2d at 587–588.

In the present controversy, like the facts in *Passarella*, no medical doctor testified that Schindler suffered an actual head injury. In fact, the report was presented by Schindler's mother. Thus, any testimony regarding the emergency room report presented by Schindler's mother would not have been competent.

Because the officer had reasonable grounds to request Schindler submit to chemical testing and there was no proof of

a head injury being suffered by Schindler or that such head injury caused Schindler to be unable to make a knowing and conscious refusal, I would reverse the trial court's decision.