# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Neil Jessen,                    :

              Appellant     :

                         :

             v.             :    No. 250 C.D. 2019

                         :    Submitted: June 21, 2019

Commonwealth of Pennsylvania,   :

Department of Transportation, Bureau   :

of Driver Licensing             :

BEFORE:     HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**            **FILED: December 4, 2019**

Neil Jessen (Licensee) appeals from the January 14, 2019 Order of the Court of Common Pleas of Monroe County (common pleas) dismissing his appeal from a one-year suspension of his operating privilege imposed by the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (DOT) pursuant to Section 1547(b)(1)(i) of the Vehicle Code, 75 Pa. C.S. § 1547(b)(1)(i), commonly referred to as the Implied Consent Law.[1] Licensee avers common pleas

---

[1] Section 1547(b)(1)(i) of the Vehicle Code provides in relevant part:

    (1) If any person placed under arrest for violation of section 3802 [(relating to driving under the influence of alcohol or controlled substance)] is required to submit to chemical testing and refuses to do so, the testing shall not be

**(Footnote continued on next page…)**

erred in dismissing his appeal because: (1) DOT failed to establish that there were reasonable grounds for the state trooper to suspect that Licensee was driving under the influence (DUI) and to request Licensee submit to a chemical test of his blood; (2) DOT failed to establish that Licensee refused a chemical test; and (3) Licensee was advised he had no right to consult with an attorney before deciding whether to submit to a chemical test, contrary to his right to counsel under the United States (U.S.) Constitution.

## I. Factual Background and Procedure

On May 25, 2018, Licensee was arrested for DUI and transported to the Monroe County DUI Processing Center. He arrived at the DUI Center after midnight, at which time State Trooper Andrew Imperati read Licensee the warnings outlined in DOT Form DL-26B. The warnings in Form DL-26B, commonly referred to as the *O'Connell*[2] warnings or the Implied Consent warnings, read, in pertinent part, as follows:

1. You are under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code [,75 Pa. C.S. § 3802].

2. I am requesting that you submit to a chemical test of blood.

3. If you refuse to submit to the blood test, your operating privilege will be suspended for at least 12 months. If you previously refused

---

**(continued…)**

conducted but upon notice by the police officer, [DOT] shall suspend the operating privilege of the person as follows:
    (i)    Except as set forth in subparagraph (ii), for a period of 12 months.

75 Pa. C.S. § 1547(b)(1)(i).
  [2] *Dep't of Transp., Bureau of Traffic Safety v. O'Connell*, 555 A.2d 873 (Pa. 1989).

a chemical test or were previously convicted of driving under the influence, your operating privilege will be suspended for up to 18 months. If your operating privilege is suspended for refusing chemical testing, you will have to pay a restoration fee of up to $2,000 in order to have your operating privilege restored.

4. You have no right to speak with an attorney or anyone else before deciding whether to submit to testing. If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to a blood test, you will have refused the test.

(Reproduced Record (R.R.) at 121a.) After being read the foregoing warnings, Trooper Imperati asserted that Licensee did not consent to a chemical test of his blood. Trooper Imperati treated this as a refusal to consent to the test. Thereafter, by letter dated August 15, 2018, DOT suspended Licensee's operating privilege for a period of one year, pursuant to the Implied Consent Law, for Licensee's refusal to submit to the chemical test on May 26, 2018.[3] (*Id.* at 9a-12a.)

Licensee appealed the suspension to common pleas, which held a hearing on November 29, 2018. At the hearing, Trooper Imperati, the sole witness, testified as follows. On May 25, 2018, he conducted a traffic stop of Licensee for speeding. (*Id.* at 88a.) When he approached the vehicle, he "detected the odor of alcoholic beverage, to which [Licensee] related he himself had drank earlier in the evening." (*Id.* at 89a.) Based upon this, Trooper Imperati asked Licensee to exit his vehicle, at which time he had Licensee perform numerous field sobriety tests, including "[t]he horizontal gaze nystagmus [(HGN)] test, the walk-and-turn test, and the one-leg stand test." (*Id.* at 90a-91a.) On the HGN test Licensee had six out of six

---

[3] The letter dated August 15, 2018, lists the date of Licensee's refusal as March 26, 2018. This error was corrected in a subsequent notice dated February 1, 2019, which reflects that Licensee's refusal occurred on May 26, 2018. (R.R. at 75a-77a.)

indicators of intoxication, on the walk-and-turn test he had more than two indicators, and on the one-leg stand test Licensee had multiple indicators. (*Id.* at 91a-92a.) Trooper Imperati could not remember what the specific indicators were because he did not have his report with him at the hearing. (*Id.* at 99a.) Based upon the results of the tests, Trooper Imperati "believed [Licensee] to be under the influence of alcohol." (*Id.* at 92a.)

Trooper Imperati further testified that at this point he arrested Licensee for DUI and transported Licensee to the DUI Center. (*Id.* at 93a.) The transport took approximately 15 minutes, during which time Trooper Imperati informally "went over the DL-26 [Form]." (*Id.* at 93a-94a.) Upon arrival at the DUI Center, Trooper Imperati read Licensee the DL-26B Form verbatim at 12:07 a.m. (*Id.* at 94a.) After looking over the form, Licensee signed it around 12:15 a.m., indicating he had been provided with the warnings contained therein. (*Id.* at 95a.) According to Trooper Imperati, Licensee "chose not to supply a chemical test result." (*Id.*) On cross-examination, Counsel for Licensee timed Trooper Imperati as he read the warnings contained in Form DL-26B. By Counsel's own timing, it took 57 seconds for Trooper Imperati to read Form DL-26B, surmising that approximately 8 minutes passed between when Trooper Imperati read the form and when Licensee refused the chemical test. (*Id.* at 104a-05a.) Trooper Imperati indicated that during this eight-minute timespan, Licensee reviewed the DL-26B Form and asked a few questions. Trooper Imperati could not recall what specific questions Licensee asked. (*Id.* at 105a.) Trooper Imperati then told Licensee that he needed a decision on whether Licensee would consent to a chemical test. Trooper Imperati stated that Licensee refused the test "[b]ecause he did not provide the blood because he said he was not providing the blood draw [sic]." (*Id.* at 106a.)

4

In its Opinion issued after the hearing, common pleas found Trooper Imperati to be credible, noting that while it would have been helpful if he had had his notes with him in court, he was convincing and believable nonetheless. (Common Pleas' Opinion (Op.) at 7.) Relying on that testimony, common pleas found that "there were reasonable grounds for [T]rooper [Imperati] to suspect[] Licensee could have been under the influence of alcohol while driving and for placing him under arrest for suspension of DUI." (*Id.*) Common pleas concluded that DOT met its burden regarding the requirements for imposing an operating privilege suspension, specifically finding that Trooper Imperati "warned [] Licensee that a refusal [to submit to chemical testing] would result in a suspension of his driver's license . . . [and] asked [] Licensee to submit to a chemical blood test," which Licensee refused. (*Id.*) Common pleas further concluded that pursuant to the reasoning set forth in *Birchfield v. North Dakota*, 136 S. Ct. 2160 (2016), and *Boseman v. Department of Transportation, Bureau of Driver Licensing*, 157 A.3d 10 (Pa. Cmwlth. 2017), Licensee had no constitutional right to counsel before deciding whether to submit to the chemical test of his blood. Accordingly, by Order dated January 14, 2019, common pleas dismissed Licensee's appeal of DOT's suspension.[4]

## II. Discussion

As set forth above, on appeal,[5] Licensee presents the following three issues: (1) DOT failed to establish that there were reasonable grounds for Trooper

---

[4] By order dated March 8, 2019, common pleas granted an unopposed motion for supersedeas pending this Court's adjudication of the present appeal. (R.R. at 80a.)

[5] "Our standard of review is whether [common pleas'] findings are supported by competent evidence and whether [common pleas] committed an error of law or an abuse of **(Footnote continued on next page…)**

Imperati to suspect that Licensee was DUI and to request Licensee submit to a chemical test of his blood; (2) DOT failed to establish that Licensee refused a chemical test; and (3) Licensee was advised he had no right to consult with an attorney before deciding whether to submit to a chemical test, contrary to his right to counsel under the U.S. Constitution.

Preliminarily, before we turn to the parties' arguments, we note that in order to sustain the operating privilege suspension against Licensee, DOT bears the burden of demonstrating that Licensee:

> (1) was arrested for DUI by a police officer with reasonable grounds to believe . . . [L]icensee was operating a vehicle while under the influence of alcohol or a controlled substance; (2) was requested to submit to chemical testing; (3) refused to submit to chemical testing; and, (4) was warned by the officer that [his] license will be suspended if [he] refused to submit to chemical testing.

*Park v. Dep't of Transp., Bureau of Driver Licensing*, 178 A.3d 274, 280 (Pa. Cmwlth. 2018). Once DOT demonstrates the foregoing, the burden then shifts to Licensee to prove he "was physically incapable of performing the test or that [his] refusal was not knowing and conscious." *Id.*

Further, we also note that in reviewing common pleas' Opinion and Order in this matter we are guided by the well-established principle that "it is not the province of this Court to make new or different findings of fact." *Reinhart v. Dep't of Transp., Bureau of Driver Licensing*, 954 A.2d 761, 765 (Pa. Cmwlth. 2008). Our role here is limited to reviewing common pleas' findings of fact "to

---

**(continued…)**
discretion." *Drudy v. Dep't of Transp., Bureau of Driver Licensing*, 795 A.2d 508, 510 n.5 (Pa. Cmwlth. 2002). For questions of law, our scope of review is plenary. *Whitaker v. Wetzel*, 170 A.3d 568, 572 n.3 (Pa. Cmwlth. 2017).

determine if they are supported by substantial, competent evidence." *Id.* If common pleas' factual findings are supported by substantial evidence, "we are precluded from overturning those findings." *Id.* "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Helwig v. Dep't of Transp., Bureau of Driver Licensing*, 99 A.3d 153, 159 (Pa. Cmwlth. 2014). We must view the evidence in this matter in a light most favorable to DOT, "the party that prevailed before" common pleas. *Bradish v. Dep't of Transp., Bureau of Driver Licensing*, 41 A.3d 944, 945 n.3 (Pa. Cmwlth. 2012). Additionally, "[d]eterminations as to the credibility of witnesses and the weight assigned to the evidence are solely within the province of the trial court as fact-finder." *Reinhart*, 954 A.2d at 765.

> A. *Whether DOT established that Trooper Imperati had reasonable grounds to suspect Licensee was DUI and to request Licensee consent to a chemical test.*

Licensee avers common pleas erred by concluding DOT met its burden of demonstrating that Trooper Imperati had reasonable grounds to suspect Licensee was DUI and to request Licensee to submit to a chemical test of his blood. Specifically, Licensee argues that Trooper Imperati's testimony that Licensee "was exceeding the speed limit and exhibited the odor of alcohol or an alcoholic beverage falls well short of establishing reasonable grounds to believe that he could be operating his vehicle under the influence of alcohol or a controlled substance." (Licensee's Brief (Br.) at 10.) Licensee further argues that Trooper Imperati's testimony regarding the field sobriety tests is not enough to establish he had reasonable grounds to suspect that Licensee was DUI because Trooper Imperati's testimony "was conclusory as he was unable to describe even a single detail of the field sobriety result." (*Id.* at 9.) Lastly, Licensee argues that he was

7

not involved in an accident like the licensee in *Department of Transportation Bureau of Traffic Safety v. O'Neill*, 514 A.2d 1008 (Pa. Cmwlth. 1986), did not have glassy eyes like the licensees in *Stancavage v. Department of Transportation, Bureau of Driver Licensing*, 986 A.2d 895 (Pa. Cmwlth. 2009), or *Sisinni v. Department of Transportation, Bureau of Driver Licensing*, 31 A.3d 1254 (Pa. Cmwlth. 2011), nor was there evidence that he was following too closely while driving, staggering, or slurring his speech. As such, Licensee contends Trooper Imperati did not have reasonable grounds to suspect he was DUI and to request the chemical test; therefore, his operating privilege suspension should be overturned because DOT did not meet its burden to sustain the suspension.

DOT responds by arguing that Trooper Imperati's testimony before common pleas established that he had reasonable grounds to suspect Licensee was DUI. DOT asserts that Trooper Imperati's detection of the odor of alcohol, coupled with Licensee's admission that he had been drinking and the fact that Licensee showed several indicators of intoxication when performing the field sobriety tests, is sufficient evidence to establish Trooper Imperati had reasonable grounds to suspect Licensee was DUI.

"The question of whether an officer had reasonable grounds to arrest a licensee is a question of law fully reviewable by this [C]ourt on a case-by-case basis." *Yencha v. Dep't of Transp., Bureau of Driver Licensing*, 187 A.3d 1038, 1044 (Pa. Cmwlth. 2018). In considering whether DOT met its burden of demonstrating that Trooper Imperati had reasonable grounds to suspect Licensee was DUI, "we consider the totality of the circumstances and determine, as a matter of law, whether a person in the position of the arresting officer could have

reasonably reached this conclusion." *Helt v. Dep't of Transp., Bureau of Driver Licensing*, 856 A.2d 263, 266 (Pa. Cmwlth. 2004). In DUI cases,

> "[r]easonable grounds" exist when a person, in the position of the police officer, viewing the facts and circumstances as they appeared at the time of the arrest, could have concluded that the licensee was operating a vehicle while under the influence of alcohol or controlled substances. [*Banner v. Dep't of Transp., Bureau of Driver Licensing*, 737 A.2d 1203, 1207 (Pa. 1999).] This test, as a whole, is not very demanding. In fact, the arresting officer need not even be correct in his belief that the licensee was intoxicated. *Dep['t] of Transp[.], Bureau of Traffic Safety v. Dreisbach*, [] 363 A.2d 870, 872 ([Pa. Cmwlth.] 1976).

> The question of whether reasonable grounds exist is reviewed on a case[-]by[-]case basis. *Banner*, [] 737 A.2d at 1207. All of the facts and circumstances, as they appeared at the time of the arrest, must be considered. *Schindler v. Dep['t] of Transp[.], Bureau of Driver Licensing*, 976 A.2d 601, 605 (Pa. Cmwlth. 2009). There is not a set list of behaviors that must be exhibited in order for an officer to have reasonable grounds. *Stancavage . . .* , 986 A.2d [at] 899 []. Our case law has identified factors that constitute reasonable grounds. They include: a licensee who staggers or sways; has slurred speech; exhibits uncooperative behavior; or emits an odor of alcohol. *Id.* Where the arresting officer cites a driver's glassy eyes, there must be at least one other obvious physical sign of intoxication in order for the officer to have reasonable grounds for arrest. *Id.*

> On the other hand, the absence of one or more of the above-listed *Stancavage* factors does not mean the officer lacks reasonable grounds to believe a motorist has driven while intoxicated.

*Farnack v. Dep't of Transp., Bureau of Driver Licensing*, 29 A.3d 44, 48 (Pa. Cmwlth. 2011) (footnote omitted). The "reasonable grounds" standard "used to

9

support a license suspension is a lesser standard than the probable cause standard[6] required for criminal prosecution." *Id.* at 48 n.4.

In *Stancavage,* we reviewed a trial court's finding that a police officer did not have reasonable grounds to suspect a licensee was DUI. The officer in *Stancavage* pulled over a licensee "allegedly for speeding and following too closely behind another vehicle." 986 A.2d at 896. The officer "noticed that [the licensee's] eyes were glassy, but that there was no smell of alcohol emitting from him." *Id.* At that point, the officer had the licensee exit the vehicle and perform several field sobriety tests. The officer asserted the licensee failed these tests. After conducting a search of the licensee's car, the officer arrested the licensee for DUI. Thereafter, the officer requested the licensee consent to a chemical test of his blood and read the licensee the DL-26 Form. The licensee refused to consent to a blood test. As a result of his refusal, DOT suspended the licensee's operating privilege pursuant to the Implied Consent Law. The licensee appealed, and as stated above, the trial court found the officer lacked reasonable grounds to suspect the licensee was DUI. The trial court reasoned that speeding and following too closely were not indicators of intoxication and that while glassy eyes were an indicator, they are, without more, insufficient to establish reasonable grounds to suspect intoxication. As to the field sobriety tests, the trial court found the officer's testimony on this subject to be "weak and unconvincing in that he could not remember exactly the extent of [the licensee's] failure." *Id.* at 897. Based upon the trial court's determinations as to weight of the evidence and credibility of

---

[6] "[P]robable cause is a reasonable ground of suspicion supported by circumstances sufficient to warrant that an ordinary prudent person in the same situation could believe a party is guilty of the offense charged." *Turano v. Hunt*, 631 A.2d 822, 825 (Pa. Cmwlth. 1993).

10

the officer's testimony, we affirmed. We concluded that the trial court "did not abuse its discretion[] given that its determination is supported by the record." *Id.* at 899.

Before common pleas, Trooper Imperati testified, among other things, that when he approached Licensee he detected the odor of an alcoholic beverage, which Licensee admitted to consuming earlier that evening. Trooper Imperati further testified that he administered three field sobriety tests and, on each test, Licensee presented multiple indicators of intoxication. However, Trooper Imperati could not remember what the specific indicators were because he did not bring his report of the incident with him to court. Common pleas credited Trooper Imperati's testimony. We are bound by common pleas' credibility determinations. *Reinhart*, 954 A.2d at 765. The question then becomes, did Trooper Imperati, based upon the foregoing facts, have reasonable grounds, at the time of the incident, to suspect Licensee was DUI. Common pleas concluded that, based upon the foregoing testimony, Trooper Imperati had reasonable grounds to suspect Licensee was DUI. We agree.

A person, in the same position as Trooper Imperati, that detects the odor of an alcoholic beverage on a licensee, observes the licensee admit that he had been drinking, and views indicators of intoxication while the licensee is performing field sobriety tests could conclude that the "licensee was operating a vehicle while under the influence of alcohol or controlled substances," *Banner*, 737 A.2d at 1207. As such, based on the facts of this case, Trooper Imperati had reasonable grounds to suspect Licensee was DUI. Licensee asserts that reasonable grounds do not exist in this case because there is no evidence that he had glassy eyes, slurred speech, or that he was staggering. However, "the absence of one or more" indicators of

11

intoxication outlined by this Court in prior decisions does not mean that Trooper Imperati did not have reasonable grounds to suspect that Licensee was DUI. *Farnack*, 29 A.3d at 48. Rather, we review questions of reasonable grounds on a case-by-case basis because "[t]here is not a set of behaviors that must be exhibited in order for an officer to have reasonable grounds." *Id*. Therefore, Trooper Imperati did not lack reasonable grounds simply because he did not observe every indicator of intoxication that this Court has previously outlined in prior decisions.

To the extent that Licensee argues this case is similar to *Stancavage* because Trooper Imperati could not recall, with specific detail, the indicators of intoxication that Licensee demonstrated on the field sobriety tests, we disagree. While we agree with common pleas that it would have been helpful for Trooper Imperati to have his report with him when testifying so he could recount the specific indicators of intoxication, there are other indicators of intoxication in this matter besides Licensee's performance on the field sobriety tests. Here, Trooper Imperati detected the odor of alcoholic beverage on Licensee and Licensee admitted to Trooper Imperati that he had been drinking earlier that evening. Licensee's argument that Trooper Imperati did not have reasonable grounds to suspect he was DUI because he did not have glassy eyes, was not in an accident, etc., omits the fact that Licensee admitted to Trooper Imperati that he had been drinking earlier that evening. Therefore, as set forth above, based upon Trooper Imperati's testimony, which was credited by common pleas, we conclude Trooper Imperati had reasonable grounds to suspect Licensee was DUI. Accordingly, we conclude common pleas did not err as a matter of law in reaching the same conclusion.

12

*B. Whether DOT failed to demonstrate that Licensee refused to submit to a chemical test of his blood.*

Licensee avers common pleas erred by concluding DOT met its burden of demonstrating that Licensee refused a chemical test. Licensee asserts that "[t]here is no evidence in th[e] record describing how [he] allegedly refused to submit to chemical testing," and therefore, he cannot properly "defend against a refusal that has not been proven" to have occurred. (Licensee's Br. at 12.) Pointing to the approximately eight-minute delay between when the DL-26B Form was read and when Licensee allegedly refused the chemical test, Licensee contends that this timespan "makes no sense as it would not take [eight] minutes for an individual to affirmatively or implicitly refuse to submit to chemical testing of blood." *Id.* As such, Licensee contends that DOT did not meet its burden to sustain the suspension.

DOT responds by arguing it met its burden of demonstrating that Licensee refused a chemical test of his blood. Specifically, DOT points to the testimony of Trooper Imperati as sufficient evidence to demonstrate that Licensee refused to submit to the chemical test. As for the approximately eight-minute timespan between when Trooper Imperati read the DL-26B Form and when Licensee refused the chemical test, DOT asserts that Trooper Imperati was giving Licensee a meaningful opportunity to comply with the request by allowing him to review the DL-26B Form and by answering Licensee's questions.

"The question of whether a licensee refuses to submit to a chemical test is a legal one, based on the facts found by the trial court." *Nardone v. Dep't of Transp., Bureau of Driver Licensing*, 130 A.3d 738, 748 (Pa. 2015). "The trial court initially finds the facts surrounding the licensee's response to a request to submit to chemical testing and the facts surrounding the performance of the test.

13

The issue of whether there was a refusal is a question of law and reviewable by this Court." *Mueller v. Dep't of Transp., Bureau of Driver Licensing*, 657 A.2d 90, 92 (Pa. Cmwlth. 1995). This question turns on whether the licensee's "overall conduct demonstrates an unwillingness to assent to an officer's request for chemical testing." *Nardone*, 130 A.3d at 749. "A 'refusal' is 'anything substantially less than an unqualified, unequivocal assent to [submit to] a [chemical] test . . . . A refusal need not be expressed in words, but can be implied from a motorist's actions.'" *Lanthier v. Dep't of Transp., Bureau of Driver Licensing*, 22 A.3d 346, 348 (Pa. Cmwlth. 2011) (quoting *Dep't of Transp., Bureau of Traffic Safety v. Mumma*, 468 A.2d 891, 892 (Pa. Cmwlth. 1983)).

Here, as stated above, common pleas credited the testimony of Trooper Imperati. We are bound by this credibility determination. *Reinhart*, 954 A.2d at 765. Our role is limited to determining whether, based upon the facts found by common pleas, Licensee refused a chemical test of his blood. Based upon Trooper Imperati's testimony, common pleas found

> [T]rooper [Imperati] [] read the DL-26 [F]orm verbatim to [] Licensee upon arrival at the DUI Center. [] [T]rooper [Imperati] gave [] Licensee time to review the DL-26 [F]orm and the Licensee acknowledged and signed that the refusal warnings were given to him. [] Licensee was asked to submit to a chemical blood test and he refused. Trooper Imperati recalled that Licensee either verbally refused, or gave no indication he would submit to the test. Either way, [] Licensee signaled a refusal.

(Common Pleas' Op. at 7-8.) We cannot agree with Licensee that the record is devoid of evidence of how Licensee refused the chemical test. Trooper Imperati testified, and common pleas found, that Licensee either verbally refused or gave no indication he would submit. Under the law, either a verbal refusal or non-

14

responsiveness constitutes a refusal because "anything substantially less than an unqualified, unequivocal assent" is a refusal. *Lanthier*, 22 A.3d at 348 (internal quotation marks omitted). In light of the above factual findings, by which we are bound, we must agree with common pleas and conclude that Licensee refused to consent to the chemical test.

As to Licensee's argument regarding the approximately eight-minute lapse in time, that argument only serves to support common pleas' factual findings. In arguing that it would not take eight minutes for Licensee to refuse the chemical test, Licensee ignores the inverse, which is that it would not take eight minutes to consent to the test. Trooper Imperati explained the eight-minute timespan in his testimony before common pleas by indicating that he allowed Licensee to read the DL-26B Form and, following this, Licensee asked Trooper Imperati some questions. Viewing this testimony in a light most favorable to DOT, the inference drawn therefrom is that Trooper Imperati gave Licensee a meaningful opportunity to consent to the requested chemical test and that Licensee did not provide his "unqualified, unequivocal assent," *Mueller*, 657 A.2d at 93, because the passage of such a lengthy period of time "demonstrates an unwillingness to assent," *Nardone*, 130 A.3d at 749. We note that Licensee did not present any evidence to rebut Trooper Imperati's testimony. Therefore, based upon the foregoing, we affirm common pleas' conclusion that Licensee refused the chemical test.

> *C. Whether common pleas erred in dismissing Licensee's appeal from the suspension because he was advised he had no right to speak to an attorney before deciding whether to submit to the chemical test.*

Licensee avers common pleas erred by dismissing his appeal because he was "advised, contrary to the Sixth Amendment to the U.S. Constitution, that he had no right to consult with an attorney prior to deciding whether to submit to testing."

(Licensee's Br. at 14.) Licensee contends that while he understands the current state of the law is that a licensee does not have a Sixth Amendment right to counsel before deciding whether to submit to chemical testing, Licensee should have this right and, therefore, he is asserting this argument here "to preserve it for further review." (*Id.*) As support for his argument that a licensee should have the right to counsel when deciding whether to submit to a chemical test, Licensee cites to the Supreme Court's decision in *Birchfield* and our Supreme Court's grant of the petition for allowance of appeal in *Commonwealth v. Bell*, 183 A.3d 978 (Table) (Pa. 2019), *aff'd*, 211 A.3d 761 (Pa. 2019).

DOT responds by arguing that, under the current state of the law, a licensee does not have a right to counsel when deciding whether to submit to a chemical test. Citing this Court's decision in *Boseman*, DOT asserts that *Birchfield* does not alter our precedent regarding the right to counsel in these circumstances. As to *Bell*, DOT argues that based upon the petition for allowance of appeal in that case, it does not appear "that the Supreme Court's decision in *Bell* will have any impact" on our precedent regarding the right to counsel. (DOT's Br. at 27.)

As we explained in *Collons v. Department of Transportation, Bureau of Driver Licensing* (Pa. Cmwlth., No. 1186 C.D. 2018, filed July 2, 2019),[7] the current state of the law in Pennsylvania is as follows:

> As do other states, Pennsylvania's Motor Vehicle Code provides that "[a]ny person who drives . . . a vehicle . . . shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of blood . . . ." 75 Pa. C.S. § 1547(a). This "implied consent" provision also grants

---

[7] Pursuant to Section 414(a) of this Court's Internal Operating Procedures, an unreported panel decision issued by this Court after January 15, 2008, may be cited "for its persuasive value, but not as binding precedent." 210 Pa. Code § 69.414(a).

16

licensees the right to refuse such testing. *Commonwealth v. Myers*, 164 A.3d 1162, 1164 (Pa. 2017). Refusal "comes with its own set of consequences." *Id.* Section 1547 of the Vehicle Code sets forth the civil penalties for refusing to take chemical tests, which include mandatory suspension of operating privileges (drivers' licenses), *see* 75 Pa. C.S. § 1547(b), and provides that a licensee's refusal to submit to chemical testing is admissible in evidence in criminal proceedings, *see* 75 Pa. C.S. § 1547(e). Police officers who request a chemical test are required by statute and precedent to inform a licensee, who has been arrested on suspicion of driving under the influence, of the consequences of refusal. *See* 75 Pa. C.S. § 1547(b)(2); . . . *O'Connell*, 555 A.2d [at] 878 []. In *O'Connell,* the Supreme Court specified that:

> where an arrestee requests to speak to or call an attorney, or anyone else, when requested to take a breathalyzer test, we insist that in addition to telling an arrestee that his license will be suspended for one year if he refuses to take a breathalyzer test, the police instruct the arrestee that such rights are inapplicable to the breathalyzer test and that the arrestee does **not** have the right to consult with an attorney or anyone else prior to taking the test.

*Id.* at 878 (emphasis added). The Court explained that a licensee "is entitled to this information so that his choice to take a breathalyzer test can be knowing and conscious and we believe that requiring the police to qualify the extent of the right to counsel is neither onerous nor will it unnecessarily delay the taking of the test." *Id.* This clarification was necessary because "the course of conduct of the police[,]" in giving [] warnings [pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966),] when arresting the licensees, created the arrestees' confusion over their *Miranda* rights. *Id. O'Connell* has been applied to requests for all chemical tests including blood. *Dep't of Transp., Bureau of Driver Licensing v. Ingram*, 648 A.2d 285, 294-95 (Pa. 1994).

As a result of this decision, the "*O'Connell*" warning is included in Form DL-26. We have held that reading Form DL-26 to a motorist "is sufficient as a matter of law to meet the warning requirement under Vehicle Code Section 1547(b) . . . ." *Quigley v. Dep't of Transp., Bureau of Driver Licensing*, 965 A.2d 349, 354 (Pa. Cmwlth. 2009).

17

Implied consent provisions in states' motor vehicle codes were recently addressed in *Birchfield*, a United States Supreme Court opinion. At issue was whether the search incident to arrest and consent exceptions to the Fourth Amendment's warrant requirement allowed for warrantless breath and blood tests when the refusal subjected the licensee to criminal penalties. Weighing the privacy rights of individual motorists against the governmental interest of ensuring safety on the roadways, the Court concluded that the search incident to arrest exception to the warrant requirement allowed police to administer breath tests. [*Birchfield*, 136 S. Ct.] at 2177-78. The Court found the impact of breath tests on privacy interests is slight compared to the need of the government to conduct alcohol testing to ensure safety on the public roadways. *Id.* at 2184. However, the Court concluded that blood tests are highly intrusive and that, in light of the availability of less intrusive breath tests, warrantless blood tests could not be justified, absent consent or exigent circumstances. *Id.* The Court next examined whether implied consent laws can be found to provide the necessary consent, and determined "that motorists cannot be deemed to have consented to submit to a blood test on pain of committing a **criminal** offense." *Id.* at 2186 (emphasis added). Important to the present matter, the Court noted that:

> Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply. Petitioners do not question the constitutionality of those laws, and nothing we say here should be read to cast doubt on them.

*Id.* at 2185 (citations omitted).

This Court has subsequently examined the impact of *Birchfield* on the civil penalty of license suspension under our Implied Consent Law. In *Boseman . . .* , after the licensee refused to submit to a chemical test of her blood, the licensee's operating privileges were suspended pursuant to the Implied Consent Law. Citing *Birchfield*, licensee argued her suspension should be overturned based on the police officer's failure to obtain a warrant to collect a blood sample. We denied licensee's appeal, concluding "*Birchfield* does not apply to implied consent laws that merely impose civil penalties." *Boseman*, 157 A.3d at 21. Additionally, we noted that "although *Birchfield* may have some impact in criminal DUI proceedings in Pennsylvania where enhanced penalties based on refusal of a blood test are imposed, such

18

is not the case before us in this civil license suspension appeal under the Implied Consent Law." *Id.*

*Collons*, slip op. at 5-8.

After the briefs were filed in the present matter, our Supreme Court issued its decision in *Bell*. In *Bell*, the Supreme Court

> granted discretionary review to determine whether Section 1547(e) of the Vehicle Code, 75 Pa. C.S. § 1547(e), which expressly allows the Commonwealth to introduce evidence at trial that a defendant charged with . . . []DUI[] refused to submit chemical testing, violates the Fourth Amendment to the United States Constitution or Article I, Section 8 of the Pennsylvania Constitution.

211 A.3d at 763 (footnote omitted). Specifically, our Supreme Court examined whether Section 1547(e) of the Vehicle Code was in violation of the U.S. Supreme Court's decision in *Birchfield*. Our Supreme Court concluded that "the 'evidentiary consequence' provided by [the Implied Consent Law] for refusing to submit to a warrantless blood test . . . remains constitutionally permissible post-*Birchfield*." *Bell*, 211 A.3d at 776. In reaching this conclusion, our Supreme Court noted that while the U.S. Supreme Court "rejected criminal prosecution as a valid consequence for refusing a warrantless blood test" in *Birchfield*, "the Court did not break away from its prior approval of other kinds of consequences for refusal, such as 'evidentiary consequences.'" *Id.* at 775.

After reviewing *Birchfield* and *Bell*, it is clear that neither case discusses or interprets an individual's right to counsel under article I, section 9 of the Pennsylvania Constitution[8] or the Sixth Amendment to the U.S. Constitution.[9] As

---

[8] Article I, section 9 of the Pennsylvania Constitution provides, in relevant part, that "[i]n all criminal prosecutions the accused hath a right to be heard by himself and his counsel." PA. CONST. art. I, § 9.

19

such, Licensee's citation to these cases is not persuasive. Licensee boldly asserts that he "should have had a Sixth Amendment right to counsel prior to deciding whether to consent to a blood draw." (Licensee's Br. at 14.) However, as Licensee recognizes, this is not consistent with our precedent, which holds that a licensee does not have a right to counsel before deciding whether to submit to a chemical test. Accordingly, while Licensee raises this issue to preserve it for further review, (*see* Licensee's Br. at 7), we conclude that common pleas did not err in following our precedent on this issue.

## III. Conclusion

For the foregoing reasons, we conclude that DOT met its burden of demonstrating that Trooper Imperati had reasonable grounds to suspect that Licensee was DUI and to request Licensee to consent to a chemical test of his blood. Additionally, we conclude that DOT met its burden of demonstrating that Licensee refused a chemical test. Licensee does not challenge the other requirements for DOT to sustain the suspension of Licensee's operating privilege. Accordingly, we affirm common pleas' dismissal of Licensee's appeal of the suspension.

_____
**RENÉE COHN JUBELIRER,** Judge

_____

**(continued…)**
  [9] The Sixth Amendment to the U.S. Constitution provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defence." U.S. CONST. amend. VI.

20

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Neil Jessen,                 :

           Appellant       :

                         :

           v.                :    No. 250 C.D. 2019

                         :

Commonwealth of Pennsylvania,     :

Department of Transportation, Bureau   :

of Driver Licensing               :

# O R D E R

**NOW**, December 4, 2019, the Order of the Court of Common Pleas of Monroe County, dated January 14, 2019, is **AFFIRMED**.

 

 

_____

**RENÉE COHN JUBELIRER,** Judge