IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Timothy Kessler,                            :
                    Appellant              :
                                           :
        v.                                 :   No. 1697 C.D. 2018
                                           :   SUBMITTED: August 14, 2020
Commonwealth of Pennsylvania,              :
Department of Transportation,              :
Bureau of Driver Licensing                 :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                           FILED: October 13, 2020

        Timothy Kessler (Licensee) appeals from the November 28, 2018 Order of

the Court of Common Pleas of Dauphin County (Trial Court) denying his statutory

appeal from the one-year suspension of his operating privilege imposed by the

Department of Transportation, Bureau of Driver Licensing (DOT). DOT imposed

the one-year suspension pursuant to Section 1547(b)(1)(i) of the Vehicle Code,

commonly known as the Implied Consent Law, due to Licensee's refusal to submit

to chemical testing following his arrest for driving under the influence of alcohol or

a controlled substance (DUI).[1] We affirm the Trial Court's Order.

---

[1] Section 1547(b)(1)(i) of the Implied Consent Law provides:

(b) Civil penalties for refusal.—

        (1) If any person placed under arrest for a violation of [S]ection 3802 [of
        the Vehicle Code (relating to DUI)] is requested to submit to chemical
        testing and refuses to do so, the testing shall not be conducted but upon

**(Footnote continued on next page…)**

**Background**

On July 12, 2018, DOT mailed a notice to Licensee stating that his operating privilege would be suspended for one year, effective August 16, 2018, for his refusal to submit to chemical testing on May 20, 2018. Record (R.) Item No. 2, Ex. A. Licensee timely appealed to the Trial Court, which held a *de novo* hearing on November 28, 2018.

At the outset of the hearing, Licensee's counsel orally moved to preclude the testimony of DOT's sole witness, Pennsylvania State Trooper Daniel Magarelli, on hearsay grounds. Notes of Testimony (N.T.), 11/28/18, at 4. In support of his motion, counsel argued that Trooper Magarelli's testimony would include hearsay because: (1) he was not the officer who arrested Licensee; and (2) he would be unable to testify whether the arresting officer, Trooper Wesley Fry, had reasonable grounds to arrest Licensee for DUI. *Id.* at 4-5.[2] The Trial Court denied the motion and permitted Trooper Magarelli to testify. *Id.* at 5-6.

Trooper Magarelli testified that he had three years' experience as a state trooper and eight years' experience as a municipal police officer. *Id.* at 7. Trooper Magarelli estimated that he had participated in 60 to 80 DUI investigations since becoming a police officer. *Id.* at 8. Trooper Magarelli explained his relationship with Trooper Fry as follows:

---

notice by the police officer, [DOT] shall suspend the operating privilege of the person as follows:

(i) Except as set forth in subparagraph (ii), for a period of 12 months.

75 Pa. C.S. § 1547(b)(1)(i).

[2] The record does not indicate why Trooper Fry did not appear at the hearing.

2

Trooper . . . Fry was assigned to me to be trained with me for 30 days. I would be his field training officer. . . I was his first training officer; so everything from the basics to just getting acclimated into the job and what we need to do and how we make arrests and everything like that.

*Id.* at 8-9.

Trooper Magarelli testified that on May 20, 2018, he and Trooper Fry were in a patrol vehicle traveling northbound on Interstate 81 when they came upon a truck on its side. *Id.* at 9. Licensee was identified as the driver; there was also a passenger in the vehicle. *Id.* Licensee told the troopers that while "he was traveling down the highway[,] his truck began to fishtail, at which time he left the roadway, hit . . . a concrete barrier, and then his vehicle overturned." *Id.* at 9-10.

Trooper Magarelli testified that when he spoke with Licensee, he smelled a strong odor of alcohol on Licensee's breath, and Licensee's speech was noticeably "thick." *Id.* at 10. Licensee told Trooper Magarelli that he was coming from an establishment called the Hop Yard, where he had dinner with his passenger and drank two beers. *Id.* Trooper Magarelli also observed that Licensee's "eyes were bloodshot[] [and] glassy." *Id.*

The troopers led Licensee to the front of their patrol vehicle to administer field sobriety tests. *Id.* at 10-11. At that time, Licensee denied having any injuries but "was complaining of some back pain." *Id.* at 11. Later, when the emergency medical service arrived, the technicians "checked him out, cleared him, but he refused to go to the hospital for anything." *Id.*

Trooper Magarelli testified that he watched Trooper Fry administer the horizontal gaze nystagmus (HGN) test to Licensee. *Id.* During the test, Trooper Magarelli observed the size and movement of Licensee's pupils in response to the stimuli given and concluded that Licensee did not perform the test satisfactorily. *Id.*; *see id.* at 23-26. Trooper Magarelli testified that he was "standing in such a position

that [he] could make those personal observations" of Licensee. *Id.* at 11. Trooper Magarelli testified that, based on his experience and his observation of the HGN test, he believed Licensee was "under the influence of alcohol, and [it was] not just one beer." *Id.* at 11-12. The HGN test was the only field sobriety test administered at the scene "because [Licensee] started complaining of back pain" and the troopers "did not want to put him through the rest of the field[]" sobriety tests. *Id.* at 12. Trooper Magarelli testified that after the accident investigation, Trooper Fry arrested Licensee for DUI and placed him inside the patrol vehicle. *Id.*

Trooper Magarelli testified that, after arresting Licensee, Trooper Fry read the warnings on the DL-26 Form[3] to him. *Id.* at 13. While reading Licensee the warnings, Trooper Fry was seated in the driver's seat of the patrol vehicle, and Trooper Magarelli "was right at the door outside the vehicle." *Id.* at 14. Trooper Magarelli testified that he heard Trooper Fry read the "four numbered bullets" on the DL-26 Form to Licensee. *Id.* at 14-15.

Trooper Magarelli testified that after Trooper Fry finished reading the DL-26 Form, Licensee refused to submit to a blood test. *Id.* at 15. Trooper Magarelli then testified:

> Before that, I asked him, hey, do you understand what [Trooper Fry] just read to you? Yes. And then he refused the test. I then got in the vehicle then too and explained to him, hey, this is what's going to happen if you refuse this test. Everything that I just read to you, that's reality. That's going to happen to you. He then continued to refuse the test.

---

[3] The DL-26 Form "contains the chemical test warnings required by Section 1547 of the Vehicle Code, which are also known as the implied consent warnings." *Vora v. Dep't of Transp., Bureau of Driver Licensing*, 79 A.3d 743, 745 n.2 (Pa. Cmwlth. 2013).

*Id.* Trooper Magarelli testified that he observed Trooper Fry sign the portion of the DL-26 Form above the "affidavit" line at the scene. *Id.* at 15-16.[4] Trooper Magarelli reiterated that Licensee "just said he didn't want to take the blood test." *Id.* at 16.

Following Trooper Magarelli's testimony, DOT's counsel offered into evidence the DL-26 Form. Licensee's counsel initially objected to its admission but later withdrew the objection, and the Trial Court admitted the form into evidence. *Id.* at 17.

On cross-examination, Trooper Magarelli testified that "[e]verywhere on Interstate 81 is" a common location for accidents. *Id.* at 19. Trooper Magarelli testified that it was raining that night and "there was water all over the roadway." *Id.* at 20. Trooper Magarelli agreed that, in the past, other accidents had occurred at that same location when it rained. *Id.* at 19. Trooper Magarelli could not say that there was something about that area of the highway that causes accidents, "but it could be a factor in the crash." *Id.* Trooper Magarelli further testified, "I would say traveling too fast for the conditions would be another reason why [a motorist would] start to fishtail[,] because of water laying on the road . . . ." *Id.* at 20.

Trooper Magarelli agreed that, during his interaction with Licensee, Licensee was able to provide reasonable responses to his questions and seemed to be aware of his surroundings. *Id.* Trooper Magarelli explained that when he testified earlier that Licensee's speech was "thick," he meant that "it was just slower." *Id.* at 21. When asked if he knew that Licensee was from Florida,[5] Trooper Magarelli replied that he did not, and that he was unfamiliar with Licensee's normal speech pattern.

---

[4] Trooper Magarelli testified that he observed Trooper Fry fill out and sign the "affidavit" portion of the DL-26 Form at the police station. N.T., 11/28/18, at 16.

[5] The record shows that Licensee resides in Arcadia, Florida. *See* R. Item No. 2.

*Id.* Trooper Magarelli also admitted that Licensee did not exhibit any problems with balance or coordination. *Id.* at 21-22.

On re-direct examination, Trooper Magarelli testified that he had trained Trooper Fry to read the implied consent warnings on the DL-26 Form to a motorist verbatim. *Id.* at 28-29. He testified that Trooper Fry had participated in "some prior past DUIs with [him] in the beginning of his training period" and that "this wasn't [Trooper Fry's] first DUI arrest." *Id.* at 29.

Trooper Magarelli testified that before that night, he had personally read the DL-26 Form warnings to motorists suspected of DUI "at least 50" times. *Id.* When the Trial Court asked if Trooper Magarelli had heard "any deviation that caused [him] any concern that the DL-26 [Form] was not being read verbatim to" Licensee, Trooper Magarelli replied, "No." *Id.* at 30.

At the conclusion of the hearing, the Trial Court dismissed Licensee's appeal and upheld the one-year suspension of his operating privilege. *Id.* at 36. In its subsequent Pa. R.A.P. 1925(a) Opinion, the Trial Court explained its reasoning as follows:

> [T]he testimony presented at the [h]earing before this Court established that the arresting officer had reasonable grounds to conclude that [Licensee] was driving under the influence, and, therefore, was justified in requesting that [Licensee] submit to a blood test pursuant to Section 1547 of the . . . Vehicle Code. Moreover, the testimony established that [Licensee] was warned that his license would be suspended for refusing to submit to the blood test, and despite this warning, he refused to submit to said blood test. As a result, []DOT acted appropriately in suspending [Licensee's] driving privilege[] for a period of one (1) year.

Trial Ct. Op., 2/8/19, at 9. Licensee now petitions this Court for review.[6]

## Issues

(1)    Did the Trial Court abuse its discretion in denying Licensee's motion in limine and permitting Trooper Magarelli to testify regarding what Trooper Fry said to Licensee while reading the implied consent warnings to him?

(2)    Did Trooper Magarelli's testimony satisfy DOT's burden of proving that Trooper Fry had reasonable grounds to believe that Licensee was operating his vehicle while under the influence of alcohol?

## Analysis

To support the suspension of a licensee's operating privilege under the Implied Consent Law, DOT must prove that the licensee: (1) was arrested for DUI by an officer who had reasonable grounds to believe that the licensee was operating a vehicle while under the influence of alcohol in violation of Section 3802 of the Vehicle Code; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was warned that his refusal might result in a license suspension and would result in enhanced penalties if he were later convicted of DUI. *Martinovic v. Dep't of Transp., Bureau of Driver Licensing*, 881 A.2d 30, 34 (Pa. Cmwlth. 2005). Once DOT satisfies its burden of proof, the burden shifts to the licensee to prove that either: (1) his refusal was not knowing and conscious; or (2) he was physically incapable of completing the chemical test. *Id.*; *see Kollar v. Dep't of Transp., Bureau of Driver Licensing*, 7 A.3d 336, 339 (Pa. Cmwlth. 2010).

---

[6] Our scope of review in a license suspension appeal is limited to determining whether the Trial Court's findings are supported by competent evidence, whether the Trial Court committed an error of law, or whether the Trial Court manifestly abused its discretion. *Pappas v. Dep't of Transp., Bureau of Driver Licensing*, 669 A.2d 504, 507 n.4 (Pa. Cmwlth. 1996).

7

On appeal, Licensee does not dispute that he was asked to submit to a chemical test and refused to do so. As discussed more fully below, Licensee challenges whether the arresting officer had reasonable grounds to request a chemical test and whether he was adequately warned that his refusal would result in a license suspension.

### 1. Hearsay Objection

First, Licensee asserts that Trooper Magarelli was not the arresting officer, nor was he the officer who read the implied consent warnings to Licensee. As such, Licensee contends that the Trial Court abused its discretion in permitting Trooper Magarelli to testify, over Licensee's hearsay objection, regarding Trooper Fry's reading of the implied consent warnings to Licensee. We disagree.[7]

"Hearsay is defined as a 'statement, other than one made by the declarant while testifying at a trial or hearing, offered into evidence to prove the truth of the matters asserted,' and may not be admitted absent an exception." *Hyer*, 957 A.2d at 810 n.4 (citing Pa. R.E. 801(c)). "However, *if the out-of-court statement is offered not to prove the truth of the statement made by the out-of-court declarant, but instead to prove that the statement was in fact made, the out-of-court statement is not hearsay* regardless of who made it or how it was reported to the witness." *Duffy v. Dep't of Transp.*, *Bureau of Driver Licensing*, 694 A.2d 6, 9 (Pa. Cmwlth. 1997) (emphasis added).

The Trial Court explained its reason for denying Licensee's motion to exclude Trooper Magarelli's testimony as follows:

---

[7] The Trial Court has broad discretion to determine whether evidence is admissible, and we will not reverse the Trial Court's evidentiary ruling absent an abuse of discretion. *Hyer v. Dep't of Transp., Bureau of Driver Licensing*, 957 A.2d 807, 810 n.4 (Pa. Cmwlth. 2008).

8

> When Trooper Fry read the DL-26[] [F]orm to [Licensee] inside the patrol car, Trooper Magarelli was standing right at the door outside the patrol vehicle, and, therefore, he was able to hear Trooper Fry when he was reading the form to [Licensee]. Trooper Magarelli testified that he had specifically trained Trooper Fry to read the DL-26[] [F]orm verbatim whenever providing implied consent warnings to licensees. . . . Moreover, after [Licensee] refused Trooper Fry's initial request for a blood test, Trooper Magarelli entered the patrol car and re[-]explained to [Licensee] the consequences of refusing a blood test.

Trial Ct. Op., 2/8/19, at 8-9.

In reviewing the Trial Court's evidentiary ruling, we find *Department of Transportation, Bureau of Traffic Safety v. Grasso*, 508 A.2d 643 (Pa. Cmwlth. 1986), instructive. In *Grasso*, this Court held that the trial court erred in excluding as hearsay the arresting officer's testimony concerning what the officer administering the implied consent warnings and breath test stated to the licensee. *Id.* at 644. While the arresting officer, Officer Varlene, testified that the licensee refused to submit to the breath test, she did not personally ask the licensee to take the test, nor did she personally warn him that refusal would result in the loss of his operating privilege. *Id.* at 643. The officer who administered the test did not attend the hearing. *Id.* The licensee's counsel objected on hearsay grounds to Officer Varlene's testimony concerning what the administering officer said, and the trial court sustained the objection. *Id.* at 643-44.

On appeal, this Court vacated the trial court's order and remanded the matter for a new evidentiary hearing. We concluded that "[t]he trial court erred . . . in not allowing Officer Varlene to testify as to *whether the administering officer made the request and gave the requisite warning [to the licensee]*." *Id.* at 644 (emphasis added). We explained:

*Any testimony given by Officer Varlene concerning what the administering officer said to [the licensee] would not be offered to prove the truth of what the administering officer said. Such testimony would be offered merely to show that the administering officer made such a statement.* Our Supreme Court has said that "[t]he hearsay rule has no application where the question is whether certain things were said or written by a third person and not whether they are true." *Commonwealth v. Jacobs*, . . . 284 A.2d 717, 719 ([Pa.] 1971) . . . .

It is clear that the trial court committed an error of law in excluding as hearsay Officer Varlene's testimony concerning what the administering officer said to [the licensee].

*Id.* (emphasis added); *see also Quigley v. Dep't of Transp.*, *Bureau of Driver Licensing*, 965 A.2d 349, 353 (Pa. Cmwlth. 2009) (stating that the implied consent warnings issued by an officer need not contain any specific wording; rather, they "must merely 'inform' a licensee that his[] 'operating privilege will be suspended upon refusal to submit to chemical testing'") (citation omitted).

Here, as in *Grasso*, DOT did not offer Trooper Magarelli's testimony to prove the content of the DL-26 Form; rather, DOT offered it to prove that Trooper Fry complied with the requirement to inform Licensee of the consequences of refusing to submit to a blood test. As such, Trooper Magarelli's testimony was not inadmissible hearsay.

The Trial Court specifically credited Trooper Magarelli's testimony that he heard Trooper Fry accurately read the implied consent warnings to Licensee from the DL-26 Form. Trial Ct. Op., 2/8/19, at 8. Trooper Magarelli also testified that after hearing Trooper Fry read the warnings to Licensee, Trooper Magarelli entered the patrol car and re-explained to Licensee the consequences of refusing a blood test.

10

*Id.*[8]  Therefore, we conclude that the Trial Court properly denied Licensee's motion to preclude Trooper Magarelli's testimony on this basis.

## 2. Reasonable Grounds Testimony

Licensee offers two arguments in support of his contention that DOT failed to prove that the arresting officer, Trooper Fry, had reasonable grounds to believe that Licensee had operated his vehicle while under the influence of alcohol.

First, Licensee asserts that because Trooper Fry did not testify at the hearing, DOT's evidence was insufficient to prove that he had reasonable grounds to arrest him and request a blood test.  Licensee contends that "Trooper Magarelli should not have been permitted to speculate as to why Trooper Fry arrested [Licensee] and requested a chemical test" and that "Trooper Fry was required to be present and testify to his observations" of Licensee on the night in question.  Licensee's Br. at 18.  Licensee claims that Trooper Magarelli "could not possibly know what was in the mind of the arresting officer in determining whether he had reasonable grounds to arrest [Licensee] for DUI." *Id.* at 9.  We disagree.

This Court rejected a similar argument in *Gasper v. Department of Transportation, Bureau of Driver Licensing*, 674 A.2d 1200 (Pa. Cmwlth. 1996) (*en banc*).  In that case, Officer Warner observed Officer Zerbe arrest the licensee for DUI, but Officer Warner was not present for the initial traffic stop. *Id.* at 1201.  Officer Warner testified at the hearing *de novo*, but Officer Zerbe did not appear or testify.

---

[8] This Court has held that reading the DL-26 Form to a motorist "is sufficient as a matter of law to meet the warning requirement under" the Implied Consent Law. *Quigley*, 965 A.2d at 354.  Notably, Licensee does not contend that he received insufficient or incorrect warnings, only that Trooper Magarelli should not have been allowed to testify that the warnings were given to him.

Officer Warner testified as to what he observed upon arriving at the scene of the DUI investigation as follows:

> [Officer] Warner observed a pickup truck stopped in front of [Officer] Zerbe's patrol car . . . . . [Officer] Zerbe was at the driver's door of the vehicle, talking with [the licensee], who was sitting in the driver's seat. [Officer] Warner later observed [the licensee] outside his vehicle and noticed that he was swaying back and forth and was having difficulty standing. [Officer] Warner then watched as [the licensee] performed some coordination tests which, in [Officer Warner's] opinion, were performed unsatisfactorily. [Officer] Warner testified that [the licensee] was then asked to submit to a pre-breath test. [The licensee] refused[,] stating that he was drunk.
>
> . . . [Officer] Warner testified that [Officer] Zerbe placed [he licensee] under arrest for driving under the influence of alcohol and transported him to the police station.

*Id.* at 1201-02. On cross-examination, "[Officer] Warner conceded that he had no first-hand knowledge of what occurred before his arrival on the scene." *Id.* at 1202.

Following this testimony, the licensee demurred, arguing that, based on Officer Warner's testimony, "DOT had not proven that [the licensee] was driving or in actual physical control of a vehicle[] while under the influence of alcohol." *Id.* The trial court denied the motion and dismissed the licensee's appeal. *Id.*

On appeal, we rejected the licensee's argument that DOT failed to establish reasonable grounds through the testimony of Officer Warner, who had only observed the arresting officer's interaction with the licensee following the initial traffic stop. We explained:

> [Officer] Warner testified that he responded to a traffic stop and, upon arriving at the scene, saw a vehicle on Route 39 stopped in front of a patrol car. [Officer] Warner stated that [the licensee] was seated behind the wheel of the vehicle. [Officer] Warner then observed [the licensee] outside of his vehicle and noticed that he was swaying and had

12

difficulty standing. [Officer] Warner also testified that he watched [the licensee] perform field sobriety tests which, in his opinion, were performed unsatisfactorily. He then heard [the licensee] state that he did not need to take a pre-breath test because he knew he was drunk. *Based on these circumstances, we conclude that reasonable grounds existed for [Officer] Warner to believe that [the licensee] was in actual physical control of the movement of a motor vehicle while under the influence of alcohol.*

*Id.* at 1203 (emphasis added); *cf. Schlag v. Dep't of Transp., Bureau of Driver Licensing*, 963 A.2d 598, 603 (Pa. Cmwlth. 2009) (noting that "an officer's reasonable grounds can be based on information received from a third party").

Here, Trooper Magarelli's personal observations of Licensee at the scene were more proximate, in both time and location, than that of the testifying officer in *Gasper*. Unlike the officer in *Gasper*, Trooper Magarelli did not observe another officer's DUI investigation from a distance; instead, Trooper Magarelli was present beside the arresting officer during the entire investigation, from the initial stop to the arrest. As the Trial Court correctly determined:

[G]iven the circumstances presented in the instant matter, the fact that the arresting officer, Trooper Fry, did not testify at the [h]earing does not undermine a finding that Trooper Fry had reasonable grounds to believe that [Licensee] was driving under the influence of alcohol. *The officer who testified at the hearing, Trooper Magarelli, was working directly alongside Trooper Fry at all times during the investigation of the subject traffic incident. Therefore, Trooper Magarelli's observations of the circumstances surrounding the incident were virtually identical to the observations of the arresting officer.*

Trial Ct. Op., 2/8/19, at 7 (emphasis added). We agree with the Trial Court that, under these circumstances, Trooper Fry's testimony was not required in order to establish reasonable grounds. Thus, we conclude that the Trial Court did not abuse

13

its discretion in permitting Trooper Magarelli to testify on the issue of reasonable grounds.

Second, Licensee asserts that DOT failed to prove that Trooper Fry had reasonable grounds based on the totality of the circumstances presented at the scene. According to Licensee, the evidence showed that "the accident was at a location where accidents commonly occur and there was standing rain on the roadway" at the time of the accident. Licensee's Br. at 18. Licensee also argues that "there was no indication of bad or erratic driving," his "speech was not slurred, he did not exhibit any balance nor coordination issues," and "two of the common field sobriety tests were not utilized." *Id.* at 8.[9]

In a license suspension case, "[a]s a threshold matter, []DOT must establish the arresting officer had reasonable grounds to believe the licensee operated or physically controlled the vehicle's movement while under the influence of alcohol." *Schlag*, 963 A.2d at 602. "Reasonable grounds exist when a person in the position of the police officer, viewing the facts and circumstances as they appeared at the time, could have concluded that the motorist was operating the vehicle while under the influence of intoxicating liquor." *Banner v. Dep't of Transp., Bureau of Driver Licensing*, 737 A.2d 1203, 1207 (Pa. 1999). The reviewing court must examine the totality of the evidence, including the location of the vehicle, whether the engine was running, whether there was evidence that the licensee had driven the vehicle before the arrival of the police, the licensee's general appearance, and the licensee's behavior. *Id.*

Here, Trooper Magarelli testified that he believed Licensee had been driving while under the influence of alcohol because, when he and Trooper Fry arrived at

_____

[9] Whether reasonable grounds existed is a question of law fully reviewable by this Court. *Walkden v. Dep't of Transp., Bureau of Driver Licensing*, 103 A.3d 432, 436 (Pa. Cmwlth. 2014).

14

the scene, Licensee had "a strong odor of an alcoholic beverage" on his breath, N.T., 11/28/18, at 10, "[h]is eyes were bloodshot, glassy," *id.*, he failed to satisfactorily complete the HGN test, *id.* at 11-12, and he admitted that he had been drinking beer earlier that evening, *id.* at 10. *See Sisinni v Dep't of Transp., Bureau of Driver Licensing*, 31 A.3d 1254, 1257-58 (Pa. Cmwlth. 2011) (concluding that reasonable grounds existed, where the licensee exhibited glassy eyes and a slight odor of alcohol, admitted to drinking two alcoholic beverages, and performed poorly on an HGN test, despite the licensee's passing of two other field sobriety tests).

In his appellate brief, Licensee contends that the signs of impairment Trooper Magarelli observed on the night in question were attributable to the vehicle accident, rather than Licensee's consumption of alcohol. Licensee relies on *Schindler v. Department of Transportation, Bureau of Driver Licensing*, 976 A.2d 601 (Pa. Cmwlth. 2009), wherein we affirmed the trial court's order sustaining the licensee's statutory appeal. In that case, the licensee was involved in a single-vehicle accident in which his vehicle rolled over. When the officer arrived at the scene, the licensee was sitting on the side of the road, bleeding and unable to walk. The licensee's gait was unsteady and he had trouble maintaining his balance. His preliminary breath test was negative for alcohol, but he failed the one-leg-stand and walk-and-turn tests. This Court concluded that: (1) the officer ignored that the reasonable explanation for the licensee's unsteady gait and balance issue was the accident itself; and (2) the evidence, as a whole, did not establish reasonable grounds to believe that the licensee was under the influence. Licensee argues that here, as in *Schindler*, Trooper Magarelli did not consider all relevant facts and circumstances and only considered evidence that supported a finding of intoxication.

15

*Schindler*, however, is factually distinguishable from this case. The licensee in *Schindler* did not smell of alcohol or exhibit bloodshot, glassy eyes, and he passed a preliminary breath test. The only indicator of intoxication was the licensee's unsteady gait and difficulty maintaining balance. Here, on the contrary, Trooper Magarelli testified to several factors indicating that Licensee was under the influence of alcohol – specifically, he had "a strong odor of an alcoholic beverage" on his breath, N.T., 11/28/18, at 10, "[h]is eyes were bloodshot, glassy," *id.*, he failed to satisfactorily complete the HGN test, *id.* at 11-12, and he admitted that he had been drinking beer that evening, *id.* at 10. Further, unlike the licensee in *Schindler*, Licensee told the troopers that he was *not* injured in the accident, although he did have some back pain. *Id.* at 11. Consequently, we conclude that Licensee's reliance on *Schindler* is misplaced.

In this case, Trooper Magarelli testified that he had 11 years' experience as a police officer and had made 60 to 80 DUI arrests during that time. N.T., 11/28/18, at 7-8. Trooper Magarelli considered both the nature and location of Licensee's accident, as well as the weather, but still determined, based on Licensee's outward signs of impairment and his performance on the HGN test, that Licensee had been driving while under the influence of alcohol. *Id.* at 10-11. The Trial Court credited Trooper Magarelli's testimony. Trial Ct. Op., 2/8/19, at 7-8; *see Schlag*, 963 A.2d at 603 ("Once the trial court accepts as credible an officer's testimony regarding [his] observations of the licensee, [the trial court] cannot substitute its judgment as to what inferences should be drawn from the circumstances.").

Based on Trooper Magarelli's credible testimony regarding his personal observations of Licensee, which he made while standing beside Trooper Fry, the Trial Court determined that "a reasonable person in Trooper Fry's position viewing

16

the facts and circumstances as they appeared to him at the time of the pertinent incident could conclude that [Licensee] was operating his automobile under the influence of alcohol." Trial Ct. Op., 2/8/19, at 7. We find no error in this conclusion.

## Conclusion

Accordingly, we affirm the Trial Court's Order.

_____
ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Timothy Kessler, : 
                Appellant : 
                : 
        v. : No. 1697 C.D. 2018
                : 
Commonwealth of Pennsylvania, : 
Department of Transportation, : 
Bureau of Driver Licensing : 

# **O R D E R**

AND NOW, this 13th day of October, 2020, the Order of the Court of Common Pleas of Dauphin County, dated November 28, 2018, is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge